Northey Kirkland, Plaintiff-Appellant, v. Margie Edwards Kirkland, Defendant-Appellee.

Gen. No. 48,770.

First District, First Division.

December 10, 1962.

281

George C. Adams, of Chicago, for appellant.

No appearance or brief filed for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Essentially, this appeal presents a contest between the first and third wives of Northey Kirkland, now deceased. The question is the validity of a decree of the Superior Court of Cook County, which annulled and dissolved the first marriage because the first wife, Margie Edwards Kirkland, prior to and on the date of the first marriage, was a mentally ill person, not capable of contracting marriage. The third wife, Rose Kirkland, administratrix of the estate of Northey Kirkland, deceased, appeals from an order which dismissed her petition to set aside an order which vacated the decree of annulment. No appearance or brief has been filed in this appeal on behalf of Margie Edwards Kirkland, the first wife.

On August 1, 1945, Margie Edwards was adjudged a mentally ill person by the County Court of Cook County, case No. 8081, and committed to the care and custody of her daughter, Eloise Simmons. On July 18, 1948, in Chicago, a marriage was contracted by Margie Edwards and Northey Kirkland.

On March 17, 1954, Northey Kirkland filed a complaint for the annulment of the marriage, alleging that the defendant, Margie Edwards Kirkland, was a mentally ill person at the time of the purported marriage ceremony on July 18, 1948; that her daughter, Eloise Simmons, fraudulently kept from him information of this insanity; that the laws of the State of Illinois provide that "No insane or mentally ill person or idiot shall be capable of contracting marriage," and for this reason the purported marriage was null and void ab initio. A certified copy of the County Court adjudication on August 1, 1945, that Margie Edwards was a mentally ill person, her disease being "paranoid schizo-

283

phrenia," is attached to the complaint as an exhibit. The defendants named in the complaint were "Margie Edwards Kirkland, a mentally ill person, and Eloise Simmons, guardian of the person of Margie Edwards Kirkland."

On June 18, 1954, an order was entered in the annulment proceedings, finding from the return of the sheriff that summons had been served upon both defendants and adjudging both defendants in default for failure "to file answer or otherwise make appearance herein." On June 29, 1954, a decree was entered, which declared the marriage between Margie Edwards Kirkland and Northey Kirkland "be and the same is hereby annulled and dissolved, the same as if said marriage ceremony had never been entered into." The decree made no adjudication of any property rights.

On February 14, 1955, in County Court case No. 74921, Margie Edwards Kirkland again was adjudicated to be "a mentally ill person incapable of managing and caring for her own estate," and was then ordered committed to the Kankakee State Hospital.

On July 21, 1959, Margie Edwards Kirkland filed a petition to vacate and set aside the decree of annulment, alleging that she was never served with summons, and that no guardian ad litem or conservator had been appointed to represent her in the annulment proceedings. The petition further relates that both parties had a substantial interest in a parcel of real estate in Chicago; that on June 8, 1955, an order of restoration was entered in County Court case No. 74921, and on June 25, 1958, an order of restoration was entered in County Court case No. 8081; that by virtue of the orders of the County Court, "petitioner has been restored her civil rights based upon the fact that she has recovered from mental illness or is without mental illness."

On August 13, 1959, Northey Kirkland filed a motion to strike and dismiss the petition. Among other things, he alleged that the petition consisted of conclusions of petitioner and failed to state a cause of action sufficient to give to the court jurisdiction to vacate the decree of annulment.

On June 6, 1960, an order was entered, relating that the matter had been heard on the petition of Margie Edwards Kirkland and the motion to dismiss of Northey Kirkland, and finding that the decree of annulment of June 29, 1954, was entered without the appointment of a guardian ad litem or a conservator to protect the interests of Margie Edwards Kirkland, the defendant petitioner, and, therefore, that "the court lacked jurisdiction over the person of the said Margie Edwards Kirkland, defendant and petitioner herein, to proceed to trial and to enter a decree for annulment herein, in favor of Northey Kirkland, the plaintiff." The judge entering this order was not the judge who entered the decree of annulment.

The order further finds that an examination of the record of proceedings revealed that "plaintiff failed to present to the court evidence of such a character as to sustain the allegations contained in the complaint of the plaintiff or to sustain the burden of proof as to any incapacity on the part of the defendant to enter the marriage relationship with the plaintiff on the 18th day of July, 1948." The order directed that the decree of annulment "be and the same is hereby vacated and set aside and declared for naught as and from the 27th day of May, 1960." Leave was granted to Margie Edwards Kirkland to file her answer, as a defendant, to the complaint.

On April 10, 1961, Rose Kirkland, as administrator, filed a petition suggesting the death of Northey Kirkland on March 6, 1961. The petition alleges that after

285

the entry of the decree of annulment on June 29, 1954, Northey Kirkland married again on April 4, 1955, and that a few months later the second wife died; that Northey married Rose (his third wife) on January 31, 1956, and lived with her until his death; and that at the time Margie filed her petition to set aside the decree of annulment, Northey was mentally and physically ill and so continued until death. The petition, filed "in the nature of a writ of error coram nobis," seeks the vacation of the order of June 6, 1960, because Northey was at that time "a blind, mentally ill and sick man," unable to co-operate with his attorney or to defend the action, which was concealed from the court by Margie.

On December 7, 1961, an order was entered which decreed that "all orders entered herein subsequent to the entry of the order to vacate the decree of annulment herein, be and the same are hereby dismissed, vacated and declared for naught." The instant appeal was taken from the order vacating the decree of annulment and the order of December 7, 1961.

It is difficult to discuss this appeal in any logical fashion. We have set forth the vital parts of the record and have arrived at our conclusions somewhat objectively.

 Under statutory provisions, "no insane or mentally ill person or idiot shall be capable of contracting marriage." (Ill Rev Stats, c 89, § 2.) A marriage, where one of the parties thereto is without mental capacity, is absolutely void. The mental incapacity of a person at the time of the ceremony constitutes a ground for annulment. (Pyott v. Pyott, 191 Ill 280, 61 NE 88 (1901); 26 ILP, Marriages, § 13 and § 52.) A decree of annulment only ascertains that there has been no valid marriage between the parties. No property rights are affected, but the true status of the parties in society is ascertained and judicially

declared. When it appears to the court that a marriage is an absolute nullity, the duty of the court is to decree such a marriage void. Jardine v. Jardine, 291 Ill App 152, 9 NE2d 645 (1937).

■ ■ An insane person has a legal capacity to sue or be sued, the same as a sane person, provided he has not been divested of the power by the appointment and qualification of a conservator or guardian. The appointment of a guardian ad litem for an insane person is procedural and not jurisdictional. Fulton v. Knight, 346 Ill App 122, 129–130, 104 NE2d 554 (1952).

■ ■ When the attention of a court has been called to the fact that an insane person is present without representation, it is the duty of the court to appoint a representative for such person. The appointment of the representative is merely an aid to the court and does not in any way relieve the court of the responsibility of seeing that the rights of such a defendant are protected. Schorow v. Schorow, 299 Ill App 618, 20 NE2d 143 (1939); 26 ILP, Mental Health, § 71 and § 72.

■ ■ Ordinarily, a default judgment should not be entered against an insane defendant, but such a judgment is not absolutely void, and the fact that no answer was filed for him and a default was entered may not even be grounds for reversal, where the hearing was on the merits and he was duly represented. 44 CJS, p 326.

■ After examining this record, we believe that a guardian ad litem should have been appointed to represent Margie Edwards Kirkland, even though she and her daughter had been properly served with summons. This lack of appointment might have been ground for a reversal if application was timely made with a showing of the existence of a valid defense to the action. However, the failure to appoint a guardian

287

ad litem, being procedural only, did not deprive the court of jurisdiction to enter the decree of annulment on a proper showing, which the report of proceedings of the default hearing (in the record) reflects. The decree was not void. It could not be vacated after term time by the trial court, without meeting the requirements of section 72 of the Civil Practice Act, which the petition of Margie to vacate the decree does not do. Therefore, the order vacating the decree was erroneous and void.

■ On February 14, 1955, shortly after the entry of the decree, she was again adjudged mentally ill and committed to a State Hospital. Her right of appeal from the decree was protected until after her restoration. If she had timely appealed, it is a serious question that the failure to appoint a guardian ad litem would have been ground for reversal, because nowhere in this record does it appear or is it even suggested that she was not mentally ill when the marriage was contracted. Therefore, the marriage was void ab initio and could not be cured by any court action.

We do not find in this case that any injustice resulted to Margie because of lack of knowledge of facts on the part of the trial court or the failure to appoint a guardian ad litem to represent her interests. Therefore, we hold that the order vacating the decree was void, and the orders of June 6, 1960, and December 7, 1961, were entirely improper and are erroneous and are hereby reversed. The decree of annulment of June 29, 1954, is hereby held to be valid and proper.

Orders of June 6, 1960, and December 7, 1961, are reversed.

BURMAN, P. J. and ENGLISH, J., concur.