Bluford W. Logsdon, Plaintiff-Appellee, v. Robert S. Nolen, Successor Trustee to Frederick W. Logsdon, Deceased, Defendant-Appellant.

Gen. No. 68–80.

Fifth District.

March 11, 1969.

Kern and Pearce, of Carmi, for appellant.

James W. Sanders, of Marion, for appellee.

GOLDENHERSH, P. J.

Defendant, Robert S. Nolen, Successor Trustee, appeals from the decree of the Circuit Court of Gallatin County ordering termination of a trust, a final accounting, and the conveyance to Bluford W. Logsdon, hereafter called plaintiff, of the corpus of the trust estate.

The record shows that in 1961, plaintiff, and Isabelle Logsdon, conservator of his person, filed an action against Eugene W. Logsdon, conservator of plaintiff's estate, and Frederick L. Logsdon. In Count I of their complaint the plaintiffs alleged that plaintiff, Bluford W. Logsdon is the owner of real estate, money, and "investments," which were in the possession and control of defendant, Eugene W. Logsdon, as conservator of his estate, or Isabelle Logsdon as conservator of his person; in order to provide more economical management of his property, plaintiff had executed a conveyance in trust of all his property; because plaintiff was under conservatorship the conveyance was subject to attack until it was established by proper decree that it was valid and effective; although plaintiff had been under conservatorship, he was competent to make a valid and effective conveyance in trust.

In Count II it was alleged that Eugene W. Logsdon, as conservator of plaintiff's estate, should be protected by a court order directing him to make a final accounting and deliver the assets to the trustee.

In Count III it was alleged that plaintiff has reached a point of understanding so that he no longer needs a conservator of the person.

The trust deed conveys to Fred L. Logsdon all of plaintiff's real estate and "All money, Bonds, Savings Accounts, and other investments standing in my name, or in the name of any Conservator for either my estate or person, or in the name of any other person, firm or corporation, on my behalf." It provides further that it is irrev-

ocable for the life of plaintiff, terminates on his death, designates Frederick L. Logsdon as initial trustee, and makes provision for a successor trustee if required. It provides that the trustee shall manage plaintiff's property for plaintiff's benefit, and authorizes the trustee to create and terminate tenancies, execute mineral leases and sell mineral rights. The trustee is also authorized to sell or mortgage real estate, subject to approval of the Circuit Court of Gallatin County.

On July 24, 1962, a decree was entered finding that plaintiff was adjudged an incompetent person in the County Court of Gallatin County in 1925; at the time of the execution of the Trust Conveyance plaintiff "was of sufficient mental ability and capacity to come within the meaning of the phrase 'lucid moments,' " and now has sufficient mental ability and capacity to understand the nature and consequences of the Trust Conveyance.

The decree provides:

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED:

"That the Trust Conveyance dated March 7, 1961, and recorded in Gallatin County, Illinois, in Deed Record 136, at page 474, is a good, sufficient and valid conveyance of all of the property therein described, and that BLUFORD W. LOGSDON was competent to execute and deliver the Trust conveyance, and that the same is declared to be in full force and effect."

The court held in abeyance any ruling on Counts II and III, and on November 3, 1962, entered a supplemental decree ordering the conservators of plaintiff's estate and person to make final accountings, and upon approval of the accounts by the County Court, to pay over to Frederick L. Logsdon, Trustee, all of the assets of the respective conservatorships, accept the receipt of the trustee therefor, and upon exhibiting the final receipts to the

County Court the conservatorships "shall be terminated and ended." The paragraph ordering termination of the conservatorship of the person concludes: "the said Bluford W. Logsdon having reached a state of understanding so that a Conservator of his Person is no longer required."

In October 1967, plaintiff represented by other counsel, filed a second amended complaint in which he refers to the decree of November 3, 1962, and states:

> "That the plaintiff is not under any disability or incapacity and is well able to care for his personal, as well as, real, estate, and since the plaintiff is the sole beneficiary of the Trust, no purpose is to be accomplished by the continuation of said Trust."

and prays the trust be terminated and the assets turned over to him.

The trustee answered, setting up the decrees of July and November 1962, and stating:

> "That Bluford W. Logsdon has been adjudicated an incompetent in the County Court of Gallatin County, Illinois, about the year 1925, and that such adjudication remains in force and effect, and has not been vacated or set aside, and that no proceeding has been brought for his restoration."

The court heard testimony, and thereupon entered an order finding plaintiff, as settlor and sole beneficiary of the trust, is entitled to terminate it; plaintiff is not under any incapacity, has been fully restored to his civil rights, and has the present ability to manage and care for his own person, property and affairs. The defendant trustee was ordered to convey the real estate, deliver the personal property, and make a final accounting.

As grounds for reversal, defendant contends that plaintiff, having been adjudged incompetent and incapable of managing his property, cannot compel the resto-

49

ration of his property to himself until he is adjudged competent in a proceeding instituted for that purpose in the court in which he was adjudicated to be incompetent. Defendant also argues the evidence shows plaintiff does not have sufficient mental capacity to transact ordinary business and manage his own property.

Plaintiff argues that under the provisions of chapter 3, §§ 127 and 128, Ill Rev Stats, then in force, but since repealed, the findings and order contained in the decree of November 3, 1962, terminating the conservatorships, served to restore plaintiff to his civil rights and no further proceeding seeking restoration is necessary. He contends further that as settlor and sole beneficiary, he can revoke the trust without the consent of the trustee, and the circuit court correctly ordered its termination.

■ The jurisdiction of the courts of Illinois over the persons and estates of incompetents is the creature of legislative enactment. In Cowdery v. Northern Trust Co., 321 Ill App 243, 53 NE2d 43, the court, at page 256, said: "By the common law the power of control over the persons and property of lunatics and idiots belonged to the king as parens patriae and was exercised by him through the lord chancellor, not in his character of chancellor or by virtue of the general powers of the chancery court, but under a separate and distinct commission under the sign manual from the crown. The chancellor, upon petition or information, granted a writ to inquire into the party's mind and, if found non compos, generally committed the care of his person to some friend, called the committee, and the management of his estate to an heir, designated as committee of his estate. Errors in these proceedings were redressed by writ of error in the regular courts of law and not in the House of Lords as on appeal from a court of equity. After adjudication the chancellor acted in the superintendence of

50

the lunatic's custodians or committee by virtue of his general equity powers. In this country the State succeeded to the power of the king as parens patriae, and under our form of government the power is exercised by the courts only through legislative enactment. (Citing cases.)" At page 257, the Court continued, "In Illinois the constitution (art 6, § 12) gives the circuit court 'original jurisdiction of all causes in law and equity. . . .' . . . This jurisdiction is the jurisdiction 'held and exercised by the English court of chancery by virtue of its general powers as a court of justice, and it does not include that special authority or jurisdiction delegated to the chancellor, individually, as a representative of the crown in its capacity as parens patriae. This latter authority, so far as it exists at all, is possessed only by the state legislatures.' "

In People ex rel. Pauling v. Misevic, 32 Ill2d 11, at page 14, 203 NE2d 393, the Supreme Court said, "The State, as parens patriae, exercises the same control over insane persons as was formerly exercised in England by its king, and under our form of government the power is exercised by the courts only through legislative enactments. (Citing cases.) Stated differently, it is the function of the legislature to pass laws for regulation of the property and person of those who are insane, and the judicial power may be exercised only in conformity with such laws."

In 1925, when plaintiff was adjudged incompetent, the applicable statutory provisions were found in chapters 85 and 86 of the Ill Rev Stats. Those statutes were repealed, similar legislation became a part of the Probate Act, and in 1962, the pertinent sections were sections 112 through 130 of chapter 3.

■ ■ As a court of general jurisdiction the Circuit Court of Gallatin County is presumed to have jurisdic-

tion to render any judgment or decree entered by it. Bartunek v. Lastovken, 350 Ill 380, 183 NE 333. However, no such presumption prevails in connection with special statutory jurisdiction. In such cases jurisdiction is never presumed, and whatever the jurisdiction of the court, the proceedings must be in strict conformity with the statute. Brown v. VanKeuren, 340 Ill 118, 172 NE 1.

In our opinion, the sole means of effecting the restoration of plaintiff's rights is by proceeding in accordance with the provisions of sections 129 and 130 of the Probate Act (c 3, Ill Rev Stats). Neither the decrees of 1962, nor the decree now reviewed, served to so restore him.

Relying upon Hoff v. Meirink, 12 Ill2d 108, 145 NE 2d 58, plaintiff argues that the finding in the decree of November 1962 compels the court to revoke the letters of conservatorship. In that case the court which had adjudged Miss Meirink to be mentally ill had entered an order finding her to be recovered from her mental illness, and she then proceeded under section 128 of the Probate Act, for revocation of letters of conservatorship issued by the County Court of Macoupin County. The opinion does not support plaintiff's contention.

In the action instituted in 1961, the conservator of plaintiff's person was a party plaintiff. In the proceedings now reviewed, plaintiff appears as the sole plaintiff, without a conservator, guardian, or guardian ad litem. Having been adjudged incompetent, and in the absence of an adjudication of restoration in accordance with section 129 of the Probate Act, plaintiff was without legal capacity to sue, Pyott v. Pyott, 191 Ill 280, 289, 61 NE 88; Isle v. Cranby, 199 Ill 39, 43, 64 NE 1065; In re Estate of Rankin, 322 Ill App 64, 66, 53 NE2d 747; Kirkland v. Kirkland, 38 Ill App2d 280, 186 NE 2d 794, and the decree, therefore must be reversed. Be-

cause of the conclusion reached, we do not consider the remaining contentions of the parties.

Decree reversed.

MORAN and EBERSPACHER, JJ., concur.