81 Ill. App.3d 280 (1980)
401 N.E.2d 301
In re ESTATE OF WILLIS D. SCHISLER, Deceased.  (BESSIE LONG, Appellant,
v.
FRIEDA SCHISLER, Appellee.)
No. 79-523.
Illinois Appellate Court  Third District.
Opinion filed February 25, 1980.
Doane G. Trone, of Rushville, for appellant.
Carson D. Klitz, of Rushville, for appellee.
Judgment affirmed.
Mr. JUSTICE STENGEL delivered the opinion of the court:
This appeal involves a dispute as to the validity of decedent's third marriage. Willis Schisler's first marriage was annulled in 1956 on the ground that his wife Wilda was mentally incompetent to contract a marriage. In 1964 he married his second wife, Mary, in Missouri, and they lived together on his Fulton county farm until they separated on April 12, 1973. Mary obtained a divorce from Willis on December 21, 1977. In the meantime, Willis married Frieda in Fulton County on December 18, 1974, and they lived on his farm until she left in the winter of 1978. Willis Schisler died on January 14, 1979, without a will, but leaving an estate valued in excess of $100,000.
A petition for letters of administration was filed by decedent's aunt, Bessie Long, and listed as heirs 16 cousins, 7 second cousins, 1 aunt, and 1 uncle. A cross-petition for letters of administration was filed by Frieda Schisler, listing herself as surviving spouse and the only heir. A hearing was held in the Circuit Court of Fulton County, and judgment was *281 entered in favor of Frieda Schisler. After her petition for a rehearing was denied, Bessie Long appealed.
Frieda's claim of heirship is based upon section 212(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 212(b)), under which her marriage to decedent allegedly became lawful as of the date of his divorce from Mary, and section 305 of the Act, under which, as a putative spouse, she says she acquired the rights of a legal spouse, including the rights of inheritance.
The pertinent part of section 212 is as follows:
"(a) The following marriages are prohibited:
(1) a marriage entered into prior to the dissolution of an earlier marriage of one of the parties;
(2) a marriage between an ancestor and a descendant or between a brother and a sister, whether the relationship is by the half or the whole blood or by adoption;
(3) a marriage between an uncle and a niece or between an aunt and a nephew, whether the relationship is by the half or the whole blood or between cousins of the first degree.
(b) Parties to a marriage prohibited under subsection (a) of this Section who cohabit after removal of the impediment are lawfully married as of the date of the removal of the impediment."
 1-3 Bessie Long contends that section 212 is unconstitutionally vague and indefinite because it fails to specify the method for removing the impediment, particularly between blood relatives. Since subsections (2) and (3) of section 212(a) do not affect the parties to this cause, we do not believe it necessary to resolve the constitutionality of those provisions. (Kujawinski v. Kujawinski (1978), 71 Ill.2d 563, 376 N.E.2d 1382.) The provisions which do apply are sufficiently explicit. Since no length of time is mentioned, we assume that even one night of cohabitation is sufficient to invoke section 212(b). Prior to decedent's 1977 divorce from Mary, his marriage to Frieda was prohibited under section 212(a)(1). The impediment was removed on December 21, 1977, by the divorce decree, and since Frieda lived with decedent as his wife for a time after that date, the prohibited marriage became lawful as of the date of the divorce. We believe the legislative intent is clear, and the statutory provision is valid.
Section 305 of the Act provides in part:
"Any person, having gone through a marriage ceremony, who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. A putative spouse acquires the rights conferred upon a legal spouse, including the right to maintenance following termination of his *282 status, whether or not the marriage is prohibited under Section 212 * * *."
Bessie Long argues that this section is vague, indefinite, uncertain, and violates the public policy of the State by conferring marital rights upon persons of close blood relationship. The evidence is clear that decedent and Frieda were married ceremonially. To the extent section 305 affects the parties to this cause, we find the statute sufficiently definite, explicit, and consistent with public policy. We do not consider the tangential argument relating to marriages between closely related persons. Kujawinski.
Bessie Long also insists that Frieda failed to sustain her burden of proving a valid marriage in the face of the documentary evidence of Frieda's marriage to decedent in 1974 while he was still married to Mary. It is argued that Frieda's testimony indicating that she continued to live with decedent after the date of his divorce was evasive and self-serving.
We have examined the record carefully. When asked on direct examination if she resided with decedent after December 21, 1977, Frieda answered, "Yes." On cross-examination, Frieda first said she lived on the farm until the date of decedent's death, and then she stated that she left in 1978 in the wintertime and was not living with him at the time he died. This evidence was not contradicted by any other witness.
The credibility of the witness and the weight to be given her testimony are matters within the province of the trial judge who, as the trier of fact, is in a superior position to a court of review to observe the conduct of the witness while testifying. (Schulenberg v. Signatrol, Inc. (1967), 37 Ill.2d 352, 226 N.E.2d 624.) We conclude that the judgment of the Circuit Court of Fulton County was not contrary to the manifest weight of the evidence, and we affirm.
Affirmed.
STOUDER, P.J., and ALLOY, J., concur.