GLORIA J. WHYTE *et al.*, Petitioners-Appellees, v. ESTATE OF JOHN E. WHYTE, Deceased, Julie Whyte Jefferson, Adm'r, Respondent-Appellant.

First District (3rd Division)   No. 1—90—1655

Opinion filed March 31, 1993.

GREIMAN, J., specially concurring.

Betty Burns Paden, of Evanston, for appellant.

O'Brien, O'Rourke, Hogan & McNulty, of Chicago (Michael Gilman, of counsel), for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

This case involves a dispute about the validity of decedent John E. Whyte's marriage to his third wife, petitioner Gloria J. Whyte. John was legally divorced from his first two wives, Barbara and Helen, at the time of his marriage to Gloria in Cook County, Illinois. Gloria was first married to William E. McCune in Cook County in December 1961. Gloria and William separated in 1963. In March 1970, Gloria received notice that William had filed for di-

vorce from her in Bell County, Texas. In a letter from William's attorneys, Gloria was asked to sign and return various documents to them in order to bring about the divorce. Gloria, unrepresented by counsel, executed these documents (an appearance, waiver of notice, and consent to decree) on March 24, 1970, and mailed them to William's lawyers. At this time, Gloria erroneously believed that her execution of these papers alone was all that was necessary to effectuate a divorce from William. However, it was not until November 6, 1970, that the Texas court entered its divorce decree ending the marriage. In the meantime, Gloria, believing herself to be divorced from William, married John in Cook County on August 17, 1970. Gloria and John lived together in Evanston, Illinois, until December 1979, when they separated for four months. They then resumed living with one another until John died on February 24, 1986, without a will, but leaving an estate valued in excess of $120,000. John and Gloria had no children together.

On May 29, 1987, a petition for letters of administration of the estate was filed by John's daughter, respondent Julie Whyte Jefferson, and listed as heirs herself, her brother Steven Whyte, and her half-brother Anye Whyte. On that date, the trial court entered orders appointing Julie the estate's administrator and declaring Julie, Steven, and Anye to be John's sole heirs. However, an amended order was entered on July 1, 1987, declaring Gloria an additional heir as a surviving spouse. On July 27, 1987, the trial court appointed, without objection, Gloria as the independent administrator of the estate.

On November 12, 1987, Gloria petitioned the trial court to vacate the July 27, 1987, order appointing her independent administrator of the estate. In this petition Gloria explained that she had only recently discovered that the Texas divorce decree was not entered until November 6, 1970. Accordingly, she asked the trial court to redetermine the matter. At the same time, Julie repetitioned the trial court to be appointed the estate's administrator. In its orders of that day, the trial court relieved Gloria as independent administrator, deleted her name from the list of heirs as a surviving spouse, and appointed Julie as the estate's independent administrator.

After a two-year series of motions unrelated to the issues presented in this appeal, Gloria petitioned the court on March 10, 1989, to declare her John's surviving spouse and to amend the list of heirs to include her name. After an exhaustive and contested hearing on the matter, the probate court granted Gloria's motion on

May 18, 1990. It is from this order that Julie now appeals to this court pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

Gloria's claim of heirship is premised upon section 212(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1985, ch. 40, par. 212(b)) whereby her marriage to decedent allegedly became valid as of the date of her divorce from William.

Section 212 provides, in pertinent part, as follows:

"§212. Prohibited Marriages. (a) The following marriages are prohibited:

(1) a marriage entered into prior to the dissolution of an earlier marriage of one of the parties[.]

* * *

(b) Parties to a marriage prohibited under subsection (a) of this Section who cohabit after removal of the impediment are lawfully married as of the date of the removal of the impediment."[1] (Ill. Rev. Stat. 1985, ch. 40, par. 212(b).)

Thus, the trial court ruled that Gloria and John's previously void marriage became lawful under section 212(b) because the impediment of Gloria's previous marriage to William was removed and the couple subsequently cohabitated with each other.

On appeal, Julie first urges that the trial court erred in concluding that there was a marriage between John and Gloria. Specifically, Julie cites error in the trial court's finding that: a marriage ceremony took place between the couple; the marriage license was properly executed; and Gloria's testimony was credible. We disagree.

While a trial court's decision in a case is always subject to review, a court of review may not reweigh the evidence or substitute its judgment for that of the trier of fact simply because it does not agree with the lower court or because it might have reached a different result had it been the trier of fact. A trial judge, as the trier of fact, is in a superior position to that of a reviewing court to observe the demeanor of witnesses while they testify, to judge their credibility, and to measure the weight their testimony should receive. As a result, a court of review will not disturb a trial court's finding absent a conclusion that such finding was against the manifest weight of the evidence. *In re Application of County Treasurer*

---

[1] We note that while the effective date of the Act was October 1, 1977, our review of its legislative history confirms that the General Assembly intended for the Act to have retroactive effect and that there not be a separate body of law governing marriages occurring before its enactment.

(1989), 131 Ill. 2d 541, 546 N.E.2d 506; *Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 545 N.E.2d 684; *In re Estate of Schisler* (1980), 81 Ill. App. 3d 280, 401 N.E.2d 301.

■ After a careful review of the record, we cannot conclude that the trial court's judgment was contrary to the manifest weight of the evidence. We perceive no error in the trial court's conclusion that a valid wedding ceremony had occurred and that such ceremony was duly recorded on the marriage license. Although it is true that Gloria's testimony is not free from flaws, we are not of the opinion that it is so incredible or inconsistent that it warrants reversal of this cause. Rather, we believe there was sufficient evidence from which the trial judge could find a factual basis for concluding that a marriage ceremony occurred, the impediment of Gloria's previous marriage to William was removed, and that the couple cohabitated subsequent to Gloria's divorce such that the requisites of section 212(b) were met. *Schisler*, 81 Ill. App. 3d 280, 401 N.E.2d 301.

■ Still to be considered is Julie's contention that the estate's heirs were denied due process of law. We feel obliged to point out that the estate's heirs are *not* parties to this litigation. Rather, this dispute is between the estate, represented by Julie as its independent administrator, and petitioner Gloria. Thus, it logically follows that the heirs could not be denied due process in a proceeding in which they played no part. Consequently, we find this contention is without merit.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CERDA, J., concurs.

JUSTICE GREIMAN, specially concurring:

The majority opinion is fair and equitable in result and I concur with it. However, I believe that the central issue in the case requires a different analysis.

The majority reasons that Gloria and John participated in a proper marriage ceremony; however, Gloria's prior unresolved marriage was an impediment to a lawful marriage. The majority cites section 212 of the 1977 Illinois Marriage and Dissolution of Marriage Act (the Act), which provides that upon the removal of an impediment which would otherwise invalidate a marriage and subse-

quent cohabitation, the marriage is recognized as valid from the date of removal of the impediment.

At first glance *In re Estate of Schisler* (1980), 81 Ill. App. 3d 280, 401 N.E.2d 301, would seem to support that proposition. However, we must remember that the Act became effective October 1, 1977. In *Schisler* the invalid marriage ceremony took place in 1964. The impediment was removed in 1977 *subsequent* to the effective date of the Act.

However, in the case at bar, the marriage to which the majority seeks to give validity was performed in 1970 and the impediment removed in 1970—seven years before the effective date of the Act. In *Schisler*, although the marriage ceremony was performed prior to the effective date of the Act, the removal of the impediment occurred after the effective date. Here, both the marriage and the removal of the impediment occurred long before the enactment of the Act and no part of the marriage transaction or removal of the impediment occurred under the aegis of the new legislation.

In 1977, Illinois adopted a modified version of the Uniform Marriage and Dissolution Act. (Ill. Rev. Stat. 1977, ch. 40, par. 305.) Before its enactment, marriages entered into where one party had a living spouse were absolutely void and only a reaffirmation by a valid marriage ceremony could revive such marriages. See, *e.g.,* *Kirkland v. Kirkland* (1962), 38 Ill. App. 2d 280, 186 N.E.2d 794.

Since the central issue with respect to the timing of the marriage is the removal of the impediment, it is that critical action that must take place after the effective date of the Act to breathe vitality and life into what would otherwise be a void marriage. Had the parties entered into marriages with others during the period from 1970 to 1977, to whom would they be married after the effective date of the Act?

The majority misinterprets the legislative intent as to the retro-active effect of the Act. When detractors of the 1977 Act sought to make it applicable only to marriages entered into after the effective date of the Act, the sponsor acknowledged that it would be folly to have two marriage laws.[2] The Act has application to the marriages existing at the time of enactment. Issues like marital property, child custody and a host of other provisions will be considered in light of

---

[2]See 80th Ill. Gen. Assem., House proceedings June 15, 1977, at 27 (statements of Representatives Stearney and Jaffe).

the 1977 Act notwithstanding celebration of the marriage prior to the Act.

But the marriage of Gloria and John was not an existing marriage at the time of the effective date of the Act and no cognizable event took place after the effective date of the Act which would remove any impediment to the marriage of Gloria and John. I disagree with the trial court, which suggested that their continued cohabitation after the effective date of the Act was sufficient.

Although like the majority I believe that the trial court was correct in determining that the parties celebrated a marriage in 1970 and thereafter shared a rocky off-and-on existence for the next 16 years until John's death, the actions of the parties prior to the enactment of the Act do not bring them within the penumbra of the Act by reason of section 212, but rather by section 305, which deals with the rights of a putative spouse.

That section provides:

> "Any person, having gone through a marriage ceremony, who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. A putative spouse acquires the rights conferred upon a legal spouse, including the right to maintenance following termination of his status, whether or not the marriage is prohibited, under Section 212, or declared invalid, under Section 301 ***." Ill. Rev. Stat. 1991, ch. 40, par. 305.

The purpose of section 305 is to provide a remedy for those persons who have celebrated a marriage ceremony and cohabited with each other and who in *good faith* believe themselves married, but who for other reasons would be denied the right of marriage. *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 64, 394 N.E.2d 1204; Ill. Ann. Stat., ch. 40, par. 305, Supplement to Historical & Practice Notes, at 17 (Smith-Hurd 1992), citing *In re Marriage of Flores* (1981), 96 Ill. App. 3d 279, 421 N.E.2d 393.

The rights of a putative spouse include, among others, the rights of maintenance (*In re Marriage of Belluomini* (1982), 104 Ill. App. 3d 301, 432 N.E.2d 958) and inheritance. However, the primary inquiry in determining rights under section 305 is consideration that the putative spouse had the requisite good-faith belief in the validity of the marriage. Hence, we consider the subjective attitude as well as the knowledge of the putative spouse and limit that

spouse's rights to the period in which he or she was unaware of the invalidity of the marriage. See *Hewitt*, 77 Ill. 2d at 64.

Our statute is specifically drawn to provide for termination of the status of putative spouse and that time is when the putative spouse no longer has a good-faith belief in the validity of the marriage. *(Daniels v. Retirement Board of Policemen's Annuity & Benefit Fund* (1982), 106 Ill. App. 3d 412, 435 N.E.2d 1276.) In *Daniels*, the plaintiff was always aware that her police officer husband was not divorced from his first wife; therefore, recognition of her rights under section 305 was not available to plaintiff to apportion her putative spouse's pension.

Similarly, section 305 is not available to a putative spouse for loss of consortium where the accident occurred prior to the ceremony. *Sostock v. Reiss* (1980), 92 Ill. App. 3d 200, 415 N.E.2d 1094.

The language of the statute also frees us from the impediment that the marriage was celebrated prior to the adoption of the Illinois Marriage and Dissolution of Marriage Act in 1977 since, by its terms, it does not apply to common law marriages contracted in the State after June 30, 1905. We are led to the conclusion that it must apply therefore to marriages other than common law contracted during the period prior to the enactment of the 1977 revision.

In the case at bar there is little to indicate the scope of Gloria's knowledge as to the infirmities of her marriage and when she became aware of those infirmities. However, the record does disclose that in 1989 she became aware of those infirmities after John's death. In her direct testimony, she stated:

> "I thought I was divorced from him in March. When I finally found out that I was truly divorced from Mr. McKuen was a couple of months ago [*sic*]."

Later on cross-examination she was questioned by defense counsel:

> "Q. You applied for a marriage license with John on August 4th and you believed that got your divorce on March, 1970. Alright. And you would know that in August, you would know in August that you believed you got your divorce in March.
>
> A. I still believe that. Yes."

Accordingly, what little evidence we find in the record as to Gloria's good-faith intentions clearly indicates that she was unaware that her marriage was the subject of any infirmities until after the death of John; her rights to participate in his property accrued pursuant to the provisions of section 305.

I believe, therefore, that the judgment of the circuit court of Cook County should be affirmed because Gloria has brought herself within the application of section 305.

That these are critical decisions for the court and the legislature is best evidenced by the Supreme Court:

"If there is one thing that people are entitled to expect from their lawmakers, it is rules of law that will enable individuals to tell whether they are married and, if so, to whom." *Estin v. Estin* (1948), 334 U.S. 541, 553, 92 L. Ed. 1561, 1571, 68 S. Ct. 1213, 1220 (Jackson, J., dissenting), quoted in Note, *Rights of the Putative Spouse Under Section 305 of the Illinois Marriage and Dissolution of Marriage Act*, 3 S. Ill. U. L.J. 423, 423 (1978).