*In re* ESTATE OF JEFFREY BANKS, Deceased (Delores Ann Karl, Appellant).

Fifth District    No. 5—93—0108

Opinion filed March 2, 1994.

Michael B. Metnick and Frederick J. Schlosser, both of Metnick, Barewin, Wise & Cherry, of Springfield, for appellant.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (Stephen R. Kaufmann and Todd M. Turner, of counsel), for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

Delores Ann Karl (Delores), mother and guardian of Brooke Shelby Banks (Brooke), daughter of Jeffrey Banks, decedent, appeals from the court's order denying her objection to the letters of administration issued to Barbara Sheri Hughes Banks (Barbara). On appeal, the sole issue for review is whether the court's decision that Barbara was the legal wife of decedent at the time of his death, thereby qualifying her as an heir and as legal representative of decedent's estate, was against the manifest weight of the evidence. We affirm for the reasons set forth below.

The evidence presented at the trial level consisted primarily of the common law record. On September 21, 1992, Barbara filed her petition for letters of administration, along with her affidavit of heirship, asking that she be appointed legal representative of decedent's estate. That same day, the court appointed Barbara legal representative of decedent's estate, found Barbara and Brooke to be decedent's only heirs, and issued letters of administration to Barbara. On October 21, 1992, Delores filed an objection to the appointment of Barbara as decedent's legal representative on the ground that Barbara was not legally married to decedent. It is also Delores' position that Barbara is not an heir of decedent for the same reason. A hearing was held on January 6, 1993, on Delores' objection; however, no evidence was presented; only arguments of counsel were made. Thus, any pertinent facts to be gleaned must be obtained from the documents filed herein.

The facts adduced from the record are as follows: On July 3, 1991, decedent and Barbara were married in Jefferson County, Arkansas. At the time of their marriage, decedent was still married to Delores; however, on July 15, 1991, Barbara received a summons sent to decedent notifying him of a pending divorce action filed by Delores in Las Vegas, Nevada. Decedent and Delores' marriage was dissolved on September 12, 1991. Subsequently, decedent died intestate on October 28, 1991, in St. Anthony's Memorial Hospital in Effingham County, Illinois. Following arguments of counsel, the trial court found that Barbara was the legal wife of decedent at the time of his death under section 212(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/212(b) (West 1992)).

On appeal, Delores argues that the court's finding that Barbara was decedent's legal wife at the time of his death was against the manifest weight of the evidence for several reasons: (1) that the court erred in holding that Illinois law controls instead of Arkansas law, because the marriage was contracted under Arkansas law, and that such marriage would be void under Arkansas law, (2) that even under Illinois law, decedent's and Barbara's marriage was invalid, because (a) section 212(b) of the Act only applies to marriages contracted in Illinois and (b) section 305 of the Act (750 ILCS 5/305 (West 1992)) prohibits Barbara from acting as legal representative of decedent's estate. Barbara spends considerable time in her brief arguing that Delores waived the conflict-of-law issue as to whether Arkansas or Illinois law applies, as this theory was not argued at the trial court level or, alternatively, under a conflict-of-law theory, Illinois law applies as it is the State with the most significant contacts with this case. It should be noted that much of the citation to authority by both parties is to cases in the late 1800's or in the early 1900's. With the inception of the Illinois Marriage and Dissolution of Marriage Act in 1977, many of the issues arising before the 1977 statute are resolved by the Act, and reference to these early cases is unnecessary and not always pertinent. In any event, we find that we need not consider the conflict-of-laws issue, as the statute provides the basis for our decision.

■ Section 213 of the Act (750 ILCS 5/213 (West 1992)) establishes what marriages are considered valid in Illinois. This statute provides:

> "All marriages contracted within this State, prior to the effective date of this Act, or outside this State, that were valid at the time of the contract or subsequently validated by the laws of the place in which they were contracted or by the domicile of the parties, are valid in this State, except where contrary to the public policy of this State."

Under the foregoing statute, out-of-State marriages are recognized as valid, thereby giving full faith and credit to a sister State's laws, if they were valid when contracted. However, the statute further extends what marriages are valid, even if the marriages were not valid where contracted, if the marriages were subsequently validated, either by the law of the State where contracted or by the law of the State where the parties to the marriage were domiciled. By allowing prohibited marriages to become validated, the purpose of the Illinois statute, *i.e.*, to "strengthen and preserve the integrity of marriage and safeguard family relationships" (750 ILCS 5/102(2) (West 1992)), is furthered.

In the instant case, it is clear that the marriage contracted by

decedent and Barbara was a prohibited marriage in Illinois and, according to Delores' brief, also in Arkansas. Thus, under section 213, the marriage was not valid at the time it was contracted. Thus, Arkansas law is not violated by that finding. However, the issue to be addressed is whether decedent and Barbara's marriage was subsequently validated, either under Arkansas law, since that is the State where the marriage was contracted, or by the law of the State where decedent and Barbara were domiciled. According to Delores' brief, which we will accept for purposes of this opinion as being true, Arkansas has no validation statute, so the marriage was not validated under Arkansas law. Therefore, the remaining question is whether the law of the State where the parties were domiciled validated their marriage.

■ It has been held that the terms "domicile" and "residence" are generally construed to be synonymous when both are used in the same statute, unless their meaning is limited by an express definition or by the context of the act. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 458 N.E.2d 637.) The Act uses both terms and does not define either, so it appears that the terms are interchangeable. In any event, "domicile" has been defined as the true, permanent home of a person, a place where he intends to return whenever he is absent. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 458 N.E.2d 637.) A person must have a domicile at all times, but there can be only one domicile at a time, and once a domicile is established, it continues until a new one is acquired. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 458 N.E.2d 637.) A change of domicile is effected by an actual abandonment of the first domicile, an intent not to return to it, and physical presence in another place with the intention of making the last-acquired residence the permanent home. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 458 N.E.2d 637.) The matter of domicile is largely one of intent and is primarily a question of fact. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 458 N.E.2d 637.) Very slight circumstances often decide the question of domicile, and the decision is made based upon a preponderance of the evidence that one place is favored as a domicile. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 458 N.E.2d 637.) The resolution of the question of domicile depends largely on the facts and circumstances of a particular case. *In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 458 N.E.2d 637.

■ Here, it must be inferred, by the court's ruling, that the court determined that Illinois was the domicile of decedent and Barbara at the time of decedent's death. The issue of domicile was not raised by either party at the trial level, and there is a dearth of evidence concerning decedent's domicile. However, Barbara filed an affidavit

stating that she cohabited with decedent from July 3, 1991, until his death on October 28, 1991. In Barbara's petition for letters of administration, she asserted that the decedent's residence, at the time of his death, was Box 23, Beecher City, Illinois. This evidence was uncontradicted by Delores and could be construed as establishing decedent's and Barbara's State of domicile as Illinois. In addition, Delores appears to consider Illinois decedent's domicile as well, since she also asserts in her counterpetition for appointment of legal representative of decedent's estate that decedent's place of residence was the address listed in Barbara's petition. Delores also asked that the court appoint the public administrator in Effingham County as legal representative of decedent's estate, giving impetus to the inference that she conceded decedent's domicile was Illinois at the time of his death. We note that Delores argues in her brief that Arkansas is the decedent's and Barbara's domicile and, thus, Arkansas law applies, as Arkansas was their domicile when the marriage was contracted. This argument must fail, for the domicile at the time the marriage is challenged is the domicile to be considered.

Having determined that Illinois was the State of domicile of decedent and Barbara at the time of decedent's death, then the next question becomes, does Illinois law establish that their marriage was subsequently validated? Section 212(b) of the Act provides that "[p]arties to a marriage prohibited under subsection (a) of this Section who cohabit after removal of the impediment are lawfully married as of the date of the removal of the impediment." (750 ILCS 5/212(b) (West 1992).) Subsection (a) of section 212 provides that the following marriage is prohibited: "(1) a marriage entered into prior to the dissolution of an earlier marriage of one of the parties." (750 ILCS 5/212(a)(1) (West 1992).) Under section 212(b), therefore, prohibited bigamous marriages become valid marriages at the time the impediment to the marriage is removed. (750 ILCS 5/212(b) (West 1992).) Here, Barbara and decedent's marriage became valid on September 12, 1991, the date decedent and Delores' marriage was dissolved. This ruling comports with two other cases wherein it was held that previously prohibited marriages became valid when the subsequent divorce of one of the parties to the prohibited marriages became final, thereby removing the impediment to the prohibited marriage. (*Estate of Whyte v. Whyte* (1993), 244 Ill. App. 3d 746, 614 N.E.2d 372; *In re Estate of Schisler* (1980), 81 Ill. App. 3d 280, 401 N.E.2d 301.) We find that the trial court's ruling, that Barbara was decedent's legal wife at the time of his death under section 212(b), was not against the manifest weight of the evidence.

Delores contends that section 212 of the Act only applies to mar-

riages contracted in Illinois. This section contains no such qualifying language, and we refuse to limit the scope of this section by so holding.

Delores also argues that Barbara was, at most, a putative spouse under section 305 of the Act (750 ILCS 5/305 (West 1992)), but that once Barbara received the summons for the divorce action filed by Delores on July 15, 1991, her status as a putative spouse ended, since she then had knowledge that her marriage to decedent was invalid. While Delores' analysis is accurate so far as it goes, it still must fail. Once Barbara and decedent's marriage became valid, she was decedent's legal spouse and the status of putative spouse under section 305 was no longer applicable.

For the foregoing reasons, the judgment of the circuit court of Effingham County is affirmed.

Affirmed.

CHAPMAN and WELCH, JJ., concur.