STEPHEN MALLINGA, Plaintiff-Appellant, v. HARVEY FAMILY MEDICAL CENTER *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—96—1387

Opinion filed December 11, 1997.—Rehearing denied January 13, 1998.

Edgar A. Blumenfeld, of Chicago, for appellant.

Robert A. Coe, of Robert A. Coe & Associates, Ltd., and David A. Kaufman, of David A. Kaufman & Associates, both of Northbrook, for appellees.

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff filed a complaint against defendants, Harvey Family Medical Center, South Shore Medical Group, Terrold B. Butler, Laverne A. Currie, Lowell M. Zollar and Chicago HMO, Ltd., alleging that defendants greatly diminished corporate assets resulting in great personal gain to themselves and to the detriment of plaintiff, and that defendants failed to provide compensation to plaintiff for medical services he rendered to health maintenance organization patients. Harvey Family Medical Center and Chicago HMO, Ltd., were voluntarily dismissed from the litigation. On October 27, 1993, the remaining defendants moved to strike counts I and II of the com-

plaint. The court entered an order dismissing count I of the complaint with prejudice and count II without prejudice with leave for plaintiff to file an amended count II.

On November 3, 1993, plaintiff filed an amended complaint. Defendants filed a motion to strike and dismiss plaintiff's amended complaint, and the court granted defendants' motion with prejudice on December 14, 1993. Plaintiff filed a motion to reconsider and for leave to file a second amended complaint on January 13, 1994. On March 29, 1994, the court denied plaintiff's motion for leave to file a second amended complaint but granted plaintiff leave to file a third amended complaint.

Plaintiff filed a third amended complaint on April 4, 1994, and the cause proceeded to trial, after which the court entered judgment in favor of plaintiff for $18,613. Thereafter, plaintiff filed a motion to reconsider alleging that the judgment was substantially lower than the damages proven. On March 12, 1996, the circuit court denied plaintiff's motion to reconsider the judgment. This appeal followed. We affirm as modified.

In 1983, managed health care and health maintenance organizations (HMOs) were in their initial stages. In order to provide adequate care to their subscribers, HMOs would only contract with organizations that could provide a group of doctors that offered a full range of primary care services and to whom the HMO would issue one monthly check.

In order to procure such contracts, on June 16, 1983, plaintiff and the three individual defendant doctors formed a corporation called the South Shore HMO Management Group, Inc. (SS HMO). Each of them was a 25% shareholder of SS HMO. The articles of incorporation stated the original purpose of SS HMO as follows:

> "The South Shore HMO Management Group, Inc. is a management group organized and incorporated to assist in the coordination and administration of non-medical activities for health maintenance organizations."

Shortly after the formation of SS HMO and procuring a contract with Chicago HMO, the doctors each formed a primary care unit (PCU). Dr. Zollar's and Dr. Butler's PCUs each offered pediatric care, Dr. Currie's and plaintiff's PCUs offered adult care, and plaintiff offered obstetrical/gynecological (OB/GYNE) care. Each PCU maintained a separate and independent medical practice with a separate lease, legal status, expenses, malpractice insurance, medical supplies, medical equipment and the like.

SS HMO was a medical management and administrative entity that maintained a separate and independent office from the PCUs.

SS HMO had a separate lease, expenses, personnel and office equipment. Its office contained no medical equipment or examination rooms but was equipped solely to serve the PCUs.

In 1984, as a result of a telephone conversation Dr. Zollar had with the Illinois Secretary of State's office, the name of SS HMO was changed to South Shore Medical Group, P.C., an Illinois corporation (SSMG), and the purpose of the corporation was amended, in relevant part, as follows:

> "To practice the profession of medicine, rendering that type of professional services and services ancillary thereto. All shareholders, directors and officers must be licensed to practice the profession for which the corporation is organized."

SSMG operated exactly the same as SS HMO. It continued to serve the PCUs in the same manner. The shareholders and directors remained the same, and SSMG continued to operate from the same location as SS HMO.

In 1985, plaintiff informed the other three doctors that he no longer wanted to function as a primary care physician. Thereafter, plaintiff brought in Dr. Thomas to run his PCU, and plaintiff became an OB/GYNE consultant to SSMG. Dr. Thomas ran plaintiff's PCU for approximately one year and then left.

Following Dr. Thomas' departure, plaintiff elected not to bring in another doctor to run his PCU but instead turned over all of his patients to Dr. Currie. There was no consideration paid by Dr. Currie to plaintiff for these patients, and no writing exists as to what, if any, understanding they had. Plaintiff, however, argues that there was an understanding between him and the other three doctors that they would refer all OB/GYNE HMO patients to him, with the exception of patients who objected to Jackson Park Hospital, which was where plaintiff was affiliated.

Between 1985-86, SSMG relocated it's office to 2011 East 75th Street, Chicago, Illinois. Each PCU also moved to the same location. SSMG and each of the PCUs executed separate leases and continued to maintain separate identities.

In 1987, the Secretary of State of Illinois, unbeknownst to the four doctors, administratively dissolved SSMG for failure to file its annual reports and pay its annual franchise tax. Nevertheless, the doctors continued to operate under the mistaken belief that SSMG was a corporation in good standing.

In April 1990, plaintiff resigned as chairman of the department of obstetrics and gynecology at Jackson Park Hospital.

June Dunne, an employee of SSMG, testified that she attempted to contact plaintiff for a referral from Dr. Currie's PCU in 1991. Ms.

Dunne was notified by plaintiff's former secretary that plaintiff had resigned from Jackson Park Hospital. Ms. Dunne was not given any forwarding address for plaintiff, and she was unable to locate him. Ms. Dunne also attempted to contact plaintiff for medical treatment during her own pregnancy but was unsuccessful.

Ms. Dunne further testified she was responsible for coordinating and forwarding notices of shareholders and directors meetings for SSMG, and in April or May of 1991, she tendered notice of a joint board of directors and shareholders meeting for SSMG to all four shareholders. Notice of the meeting was mailed to plaintiff's residence because Ms. Dunne did not have his office location.

Dr. Zollar testified that during this same time period he also attempted to contact plaintiff in writing and by telephone on at least three occasions but without success.

In May 1991, a joint meeting of SSMG was held. Drs. Zollar, Butler and Currie were present. Plaintiff was not present. During this meeting, SSMG was restructured. Although plaintiff remained a 25% shareholder in SSMG, only Drs. Zollar, Butler and Currie were nominated and elected as directors and officers.

By 1993, defendants had become aware of the administrative dissolution of the original SSMG and formed a new corporation without plaintiff. The name of the corporation remained as SSMG. Further, the assets of the original SSMG, which included plaintiff's 25% shareholder interest, were converted into the new corporation.

It is undisputed that there was no contact between plaintiff and any of the defendant doctors from May 1991 through the date of the filing of this suit. It is also undisputed that plaintiff has an interest in the converted assets of the original SSMG. The central issue to be resolved by this court is the scope and valuation of that interest.

■ Plaintiff first argues that subsequent to the Secretary of State's administrative dissolution of SSMG, plaintiff and the defendants operated as a partnership. Plaintiff notes, correctly so, that the requisites of a partnership are that the parties have joined together to carry on a trade or venture for their common benefit, that each contributed property or services, and that they have a community of interest in the profits; as between the parties, the existence of a partnership is a question of intent based on all the facts and circumstances. *Seidmon v. Harris,* 172 Ill. App. 3d 352, 526 N.E.2d 543 (1988).

Defendants do not deny that the legal form of SSMG after the administrative dissolution was that of a partnership but argue that plaintiff voluntarily withdrew himself as a partner.

■ The record makes clear that from the time SSMG was initially

formed, plaintiff was a 25% shareholder. After 1984, plaintiff closed his PCU, turned over all of his patients to Dr. Currie, and established an outside OB/GYNE consultant relationship in order to receive referrals from SSMG. These actions did not negate or dissipate plaintiff's 25% equity interest in SSMG.

Furthermore, the dissolution of SSMG in 1987 did not destroy plaintiff's 25% equity interest. Subsequent to that administrative dissolution, plaintiff retained a 25% equity interest in the partnership.

Nevertheless, plaintiff did not become a shareholder of the new corporation formed in 1993 and has no interest in the new SSMG. In a derivative suit, a shareholder derives the power to sue directly from the unexercised authority of the corporation. *Mann v. Kemper Financial Cos.*, 247 Ill. App. 3d 966, 618 N.E.2d 317 (1992). Since plaintiff is not a shareholder of the new SSMG, he lacks shareholder standing to bring a derivative action against the corporation.

However, majority stockholders who, after dissolution, convert corporate property and assets to their own use become equitable trustees of that property for the benefit of corporate creditors. *Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 679 N.E.2d 387 (1997). After the corporate creditors rights are satisfied, shareholders are entitled to the residue of corporate funds. *Lasday v. Weiner*, 273 Ill. App. 3d 461, 652 N.E.2d 1198 (1995). Thus, as a 25% shareholder of the original SSMG, plaintiff is entitled to a 25% share of the original SSMG assets.

■ Plaintiff next contends that SSMG was a medical practice and that the assets of SSMG must be valued on that basis. A reviewing court will not disturb the court's findings unless such a finding is against the manifest weight of the evidence. *Whyte v. Estate of Whyte*, 244 Ill. App. 3d 746, 614 N.E.2d 372 (1993). Review of the record indicates that SSMG continuously maintained separate leases, expenses, personnel and office equipment from the PCUs, which treated HMO patients. SSMG had no medical equipment, examination rooms or doctors on site. Its operations were limited to administrative work, quality assurance, peer review, file storage and liaison between the PCUs and various HMOs.

Based upon the record, there was sufficient evidence supporting the court's finding that SSMG operated solely as a flow-through service corporation and not as a medical practice. Thus, it cannot be held that the court's finding on this issue was against the manifest weight of the evidence.

Plaintiff further argues that the court abused its discretion by failing to accept the valuation placed on SSMG assets by the plaintiff's expert. Stock valuation becomes increasingly difficult and

complex where, as in this case, the company at issue is closely held and its stock is not publicly traded. *Superior Investments & Development Corp. v. Devine*, 244 Ill. App. 3d 759, 614 N.E.2d 302 (1993).

■ While there are no precise rules for determining the fair market value of a company's stock, courts have held that a proper valuation mandates the exercise of a court's judgment after considering all relevant factors. *Superior*, 244 Ill. App. 3d 759, 614 N.E.2d 302. Factors to be considered include the book value of the stock, the nature of the business, the economic outlook of the industry, the earnings capacity of the company, the possible goodwill of the company and the market price of the stock. *Stewart v. D.J. Stewart & Co.*, 37 Ill. App. 3d 848, 346 N.E.2d 475 (1976). The particular weight to be accorded each factor is particularly a matter for the trial judge. *Taxy v. Worden*, 181 Ill. App. 3d 97, 536 N.E.2d 901 (1989).

While appraisals are to be considered by the court in arriving at a fair market value, they are not binding as a matter of law and are but one source of information to be weighed and evaluated. Moreover, courts have properly rejected the appraisals of the parties where the record reveals that such appraisals are not completely accurate. *Independence Tube Corp. v. Levine*, 179 Ill. App. 3d 911, 535 N.E.2d 927 (1988).

■ In the present case, plaintiff's expert, John Hayes, based his valuation of plaintiff's claim of loss of future profits on the basis that plaintiff had an exclusive right to all referrals of OB/GYNE patients SSMG received. The evidence, however, did not support plaintiff's contention that an exclusive OB/GYNE referral agreement existed. There was no writing establishing an exclusive referral agreement.

Further, the evidence established that OB/GYNE referrals were also made to several other outside consulting doctors. Therefore, plaintiff's valuation based upon an exclusive right to all SSMG referrals of OB/GYNE patients is not accurate. On this basis, the court properly rejected plaintiff's valuation of SSMG.

■ Just as the court may adopt the valuation rendered by an appraiser, it may also reject all outside appraisals and render its own per-share value for the stock at issue. *Institutional Equipment & Interiors, Inc. v. Hughes*, 204 Ill. App. 3d 922, 562 N.E.2d 662 (1990). After evaluating the evidence presented, the court declined to accept the valuation of either party. Rather, the court chose to render its own value of plaintiff's claim based upon compensation plaintiff could have realistically expected for actual work done in either a consultant or referral relationship with SSMG. We find no abuse of discretion in the court's action.

However, we do find that, in addition to the court's award,

plaintiff is entitled to a 25% share of the profits defendants divided in 1992. The record reflects that plaintiff received OB/GYNE consultant payments from SSMG through 1991. In 1992, however, plaintiff's OB/GYNE referrals from SSMG were substantially reduced and ultimately terminated.

Defendants testified that they were collectively paid approximately $110,000 during 1992. Although defendants referred to the payments as director fees, they also acknowledged that this was merely a way of dividing the profits of SSMG. Because plaintiff retained a 25% equity interest in 1992, and OB/GYNE consultant referrals from SSMG were substantially reduced, we find that plaintiff is entitled to a 25% share of the $110,000 defendants were collectively paid in 1992.

Finally, plaintiff contends that the court erred in finding that SSMG was a flow-through corporation when, during the early stages of the trial, the court represented that SSMG was a medical practice and plaintiff relied on the court's earlier representation. In a bench trial, it is the court's function to weigh the evidence and make findings of fact. *Resolution Trust Corp. v. Hardisty*, 269 Ill. App. 3d 613, 646 N.E.2d 628 (1995). The burden of producing evidence, as well as persuading the trier of fact that certain facts are true, is on the parties. *Ambrose v. Thornton Township School Trustees*, 274 Ill. App. 3d 676, 654 N.E.2d 545 (1995).

In the instant case, plaintiff was aware that the purpose of SSMG was a contested issue. Therefore, plaintiff had a duty to present evidence to prove his position. Moreover, the record indicates that, before plaintiff rested, the court expressed its opinion that SSMG was a flow-through business. Thus, plaintiff had an opportunity to present additional evidence to support his position that SSMG was a medical practice but failed to do so. In view of the facts of record, the court did not err in finding, after weighing all the evidence presented, that SSMG was a flow-through business.

For the foregoing reasons, the order of the circuit court awarding plaintiff $18,613 is affirmed. In addition, plaintiff is awarded $27,500, representing a 25% share of the $110,000 that defendants were collectively paid in 1992. Accordingly, plaintiff is awarded a total of $46,113 against all defendants, jointly and severally.

Affirmed as modified.

HOFFMAN, P.J., and HOURIHANE, J., concur.