PRESENT: All the Justices

GEORGE MASON UNIVERSITY

                OPINION BY
v. Record No. 180005         JUSTICE D. ARTHUR KELSEY
                OCTOBER 18, 2018
MAHEEN MALIK

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

George Mason University ("GMU") appeals from a judgment of the circuit court finding that GMU's decision to deny Maheen Malik's tuition reclassification request was arbitrary, capricious, and contrary to law. Finding that the circuit court erred, we reverse and enter final judgment for GMU.

I.

Malik applied to GMU in September 2016 and was admitted as an out-of-state student in November. Malik accepted admission and registered for Spring 2017 classes, which began on January 23, 2017. On January 20, Malik requested a reclassification to receive in-state tuition for the Spring 2017 semester. Prior to enrolling at GMU, Malik had attended Northern Virginia Community College ("NVCC") from January 2014 to December 2016 with the exception of the Fall 2014 semester.

Malik stated in her reclassification request that she had initially moved to Virginia in 2013 "for education and a better future." J.A. at 45. She stated that she "presently [had] the intention of remaining indefinitely in Virginia following graduation" and planned to "find a job, and build [her] career" after graduating from GMU. *Id.* The reclassification request form asked Malik to identify her "tuition classification (resident/nonresident or in-state/out-of-state)" at any prior institution. *Id.* at 46. In response, she noted her enrollment at NVCC but left the

"Classification" column blank. *Id.* She later submitted to GMU a printout from her account at NVCC in support of her claim that she was charged in-state tuition rates for the Spring and Fall 2016 semesters. *See id.* at 96-97.

On her reclassification request form, Malik listed two previous Virginia addresses beginning as early as September 2013, and she submitted a letter from her brother, Harris Malik, that confirmed she had lived with Harris since her move to Virginia. Malik and Harris had co-signed leases at one of Malik's listed addresses from September 2014 to October 2015 and from March 2016 to June 2016, and Malik indicated on her reclassification request form that she did not own property in Virginia. Malik also listed two prior jobs, one from January to May 2014 and another from October 2014 to May 2015, and her brother's letter stated that Malik "helps me out with my business and I give her an allowance for doing so," *id.* at 68. Malik provided no other documentation about her employment, if any, after May 2015. Malik provided her 2015 Virginia and federal tax information, and she indicated that she had opened a bank account in Virginia in 2014. Malik also stated that she had obtained a Virginia driver's license in December 2013, but she acknowledged that she drove a vehicle registered and insured in her brother's name. Finally, she indicated that she had registered to vote in Virginia in March 2016.

As a result of her answers regarding her dependency status, Malik was required to provide a supplemental form, which her father filled out, containing information regarding a spouse, parent, or legal guardian. While Malik's father is a United States citizen, he listed Pakistan as his current mailing address and listed Malik's current address, without any dates, for his physical presence in Virginia. Her father stated that he would not claim Malik as his dependent on his federal or state tax returns for the year prior to her request and that he would not provide more than half of Malik's support for that same year. The form indicated that her

2

father did not own property or have a driver's license, motor vehicle registration, or voter registration in any state.

GMU denied Malik's initial reclassification request because she had not presented clear and convincing evidence that she had been domiciled in Virginia for the year prior to January 23, 2017, the date of her alleged entitlement to in-state tuition.[1] GMU found that "the timeline surrounding [Malik's] move to Virginia, and [her] decision to remain, supports the conclusion that [she was] currently in Virginia primarily for educational reasons." *Id.* at 88. GMU considered the totality of the circumstances and Malik's evidence except for Malik's voter registration, which had existed for less than one year. GMU deemed Malik's evidence to demonstrate only "the types of actions routinely performed by temporary residents of the Commonwealth and other students who are in Virginia only to obtain an education." *Id.* Additionally, because Malik was under the age of 24 at the time of GMU's determination, GMU presumed that she was a dependent of her parents and found that she had not rebutted that presumption by clear and convincing evidence that she was financially self-sufficient. As a result, GMU found that Malik shared the domicile of her parents, who lived in Pakistan according to Malik's submitted materials.

Malik twice requested that GMU reconsider its decision, but GMU denied both of those requests. Along with her first reconsideration request, Malik submitted additional documentation, including her Virginia birth certificate and a printout of her NVCC account for the last two semesters that she had attended there. In denying Malik's first reconsideration request, GMU acknowledged that her account printout suggested that NVCC "at some point may

---

[1] The "[d]ate of the alleged entitlement" is "the first official day of class within the term, semester, or quarter of the program of study in which a student is enrolled." Code § 23.1-500.

have classified you as 'in-state' for tuition classification purposes," but even so, GMU observed, "the laws of Virginia do not render classification decisions made at one higher education institution binding on other higher education institutions." *Id.* at 108. GMU concluded that "[t]here [was] more than sufficient evidence in the record to support the determination" that Malik had not rebutted by clear and convincing evidence the presumption that she was in Virginia primarily for educational purposes. *Id.* at 109. Following Malik's request for a final reconsideration, GMU again found that "none of the materials" that she had submitted "provide[d] clear and convincing evidence that [she] (a) did not move [to] and remain in Virginia for the purpose of education, or (b) intend[ed] to make Virginia [her] permanent and fixed home." *Id.* at 189.

Malik filed a petition in the circuit court for review of GMU's final administrative decision, and following two hearings, the circuit court found GMU's decision "contrary to Virginia law and arbitrary and capricious." *Id.* at 305. We awarded GMU this appeal.

II.

On appeal, GMU challenges the circuit court's judgment on several grounds that revolve around two central issues: (1) whether the circuit court exceeded its power to review GMU's administrative decision denying Malik's reclassification request and (2) whether the circuit court erred in disregarding the independent ground that Malik had failed to establish that she was financially self-sufficient and that her father, upon whom she was presumed to be dependent, was domiciled in Virginia. We agree with GMU on the first issue, and thus, we need not address the second, *see Commonwealth v. White*, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (citation omitted)).

4

A.

Under Code § 23.1-510(C), the circuit court's "function is only to determine whether the decision reached by the institution could reasonably be said, on the basis of the record, not to be arbitrary, capricious, or otherwise contrary to law." Though the ultimate decision "presents a question not of fact but of law," *Virginia Commonwealth Univ. v. Su*, 283 Va. 446, 452 (2012), the circuit court, sitting in an appellate capacity, does not conduct a plenary de novo review — one which "negates the prior proceeding" and in which the court reweighs the evidence anew, as a circuit court does on appeal from a general district court, *see, e.g.*, *Baker v. Elmendorf*, 271 Va. 474, 479 (2006).

We emphasized this point in *Ravindranathan v. Virginia Commonwealth University* by holding that "[t]he circuit court correctly refused to reweigh the evidence" and "limited its review to 'whether the decision reached by the institution could reasonably be said, on the basis of the record, not to be arbitrary, capricious or otherwise contrary to the law.'" 258 Va. 269, 274 (1999) (citation omitted). Our holding in *Su* came to the same conclusion based on the same analysis: "Because it cannot be reasonably said on the administrative record that [the institution's] decision denying [the student's] application for in-state tuition benefits was arbitrary, capricious, or otherwise contrary to law, we reverse the circuit court's judgment and enter final judgment for [the institution]." 283 Va. at 455.

B.

In this case, Malik had the burden to "establish by clear and convincing evidence (i) domicile in the Commonwealth for a period of at least one year" before the date of her alleged entitlement to in-state tuition "and (ii) the abandonment of any previous domicile, if such existed." Code § 23.1-502(A). GMU was not required to disprove that Malik had been

5

domiciled in Virginia. *See Ravindranathan*, 258 Va. at 274 (finding that the institution "was not required to present evidence to demonstrate that [the student] was not a domiciliary of this Commonwealth"). In considering a student's reclassification request, institutions "shall consider the totality of the circumstances," including, among others, the following relevant factors: (1) one year of residence in the state prior to the date of the alleged entitlement, (2) state of income tax filing or payment, (3) driver's license, (4) motor vehicle registration, (5) voter registration, (6) employment, (7) property ownership, (8) sources of financial support, and (9) "any other social or economic relationships within and outside the Commonwealth." Code § 23.1-502(B).

When reviewing these factors, the institution must give no decisional "weight to any evidence" that a student presents in support of domicile "unless such evidence has existed for a period of at least one year" prior to the date of alleged entitlement. Code § 23.1-502(A). Further, a student may not establish domicile "by mere physical presence or residence primarily for educational purposes" and may not "ordinarily establish domicile by the performance of acts that are auxiliary to fulfilling educational objectives or are required or routinely performed by temporary residents of the Commonwealth." Code § 23.1-503(A). "Continuously enrolled non-Virginia students shall be presumed to be in the Commonwealth for educational purposes unless they rebut such presumption with clear and convincing evidence of domicile." Code § 23.1-503(G).

We hold that the circuit court exceeded the scope of its review under Code § 23.1-510(C) by reweighing the evidence and substituting its judgment for that of GMU rather than reviewing only whether the institution's decision "could reasonably be said, on the basis of the record, not to be arbitrary, capricious, or otherwise contrary to law." Ample evidence supports GMU's conclusion that Malik failed to carry her burden of proving her alleged Virginia domicile by

6

clear and convincing evidence and "reinforce[s] the primacy of education as [Malik's] reason for residing in Virginia." J.A. at 189. Her stated reason for moving to Virginia was "for education and a better future." *Id.* at 45; *see George Mason Univ. v. Floyd*, 275 Va. 32, 35, 39 (2008) (noting that the student "admitted" that she had moved to Virginia "to attend law school and seek employment" (alteration omitted)).

The record also supports GMU's finding that Malik did not rebut with clear and convincing evidence the presumption that she was residing in Virginia for educational purposes because the evidence that Malik had presented "could likewise be deemed auxiliary to fulfilling [her] educational objectives" or "required or routinely performed by temporary residents of this Commonwealth," *Su*, 283 Va. at 454 (citations omitted). Malik presented evidence of a Virginia driver's license, part-time employment in Virginia, 2015 Virginia income taxes, a Virginia lease co-signed with her brother, participation in a Virginia business owned by her brother,[2] and a Virginia bank account established in 2014, but each of these acts could reasonably be deemed to be auxiliary to her educational goals or routinely performed by temporary residents. *See id.* (finding that "obtaining a driver's license" and "securing part-time employment" were acts required of or routinely performed by temporary residents); *Floyd*, 275 Va. at 34, 39-40 (finding similar acts to be "auxiliary to fulfilling [the student's] educational objectives or . . . routinely performed by temporary residents"); *Ravindranathan*, 258 Va. at 274-75 (same). Although Malik presented evidence that her car had been registered in Virginia, it had been registered and

---

[2] Despite Malik's contention that she "paid business taxes within the Commonwealth through her family LLC" and that "[s]he works at and is now a partial owner of a Virginia LLC," Appellee's Br. at 8, the record contains no evidence of Malik's payment of taxes for, employment with, or ownership of the LLC. Her brother's letter stated only that she "helps me out with *my* business and I give her *an allowance* for doing so." J.A. at 68 (emphases added). Malik presented no pay stubs, W-2s, or tax returns to verify her allegations.

insured in her brother's name. GMU also could not consider Malik's statement that she had registered to vote in Virginia in March 2016 because her voter registration had existed for less than one year prior to the date of her alleged entitlement to in-state tuition, *see* Code § 23.1-502(A).

C.

In support of the circuit court's reversal of GMU's decision, Malik places great emphasis on her assertion that NVCC classified her as an in-state student for tuition purposes: "It is nothing but arbitrary," she says, "for one Virginia institution of higher education weighing the same factors and looking at the same Administrative Record, and asking nearly identical questions of the same student to come to completely opposite conclusions." Appellee's Br. at 6. That assertion, however, presupposes that the first institution's decision necessarily binds — or, at least, should bind — the second institution. If the first institution's decision does not bind the second institution, there would be nothing arbitrary about the second institution exercising its independent judgment and reaching a different decision.

Malik's argument centers around the college-transfer policy drafted by the State Council of Higher Education for Virginia ("SCHEV"). That policy provides that "[t]he development of guaranteed and dual admission agreements should provide Virginia's students with certainty in their plans to transfer seamlessly from a two-year college, to a public, four-year institution" and that "[t]ransfer students should have, to the extent possible, the same opportunities as native students of comparable standing in such areas as course selection, registration, access to campus housing, and financial aid." SCHEV, State Policy on College Transfer, app. A, at 8-9 (July 19, 2016) [hereinafter College Transfer Policy], http://www.schev.edu/docs/default-source/institution-section/GuidancePolicy/policies-and-guidelines/transferpolicy110.pdf. Malik argues

8

that these seamless transfer guidelines "should extend to the cost analysis of transferring to a four-year institution" and that GMU's failure to come to the same conclusion as NVCC was arbitrary and capricious. Appellee's Br. at 6-7.

The SCHEV policy, however, is not a statute or an administrative regulation and, thus, does not have the force of law. The SCHEV policy guidelines are merely "intended to construct a framework for" efficient college transfers "while recognizing the *autonomy and legal authority* of institutional Boards of Visitors in the admission of students." College Transfer Policy, *supra*, app. A, at 7 (emphasis added); *see* Code § 23.1-212(A) ("The powers of the governing boards of public institutions of higher education over the affairs of such institutions are not impaired by the provisions of this chapter except to the extent that powers and duties are *specifically conferred upon* the [SCHEV] in this chapter." (emphasis added)).

The SCHEV Domicile Guidelines themselves disclaim any effort at making a "[p]rior determination of a student's domiciliary status by one institution . . . conclusive or binding when subsequently considered by another institution." SCHEV, Domicile Guidelines 7 (Aug. 1, 2018), http://www.schev.edu/docs/default-source/institution-section/Financial-Aid-and-Domicile-Officers/domicile-guidelines2.pdf. Instead, they merely recommend that, "assuming no change of facts, the prior judgment should be considered." *Id.*[3] When a *binding law* requires a tribunal "to consider certain decision making factors," that does not mean that the tribunal "must assign 'measurable weight in the decisional process' to each factor or somehow quantify

---

[3] Malik bore the burden of proving that no change of facts had occurred between NVCC's determination and GMU's determination. The administrative record contains no evidence regarding Malik's application for in-state tuition at NVCC or NVCC's rationale for awarding her in-state tuition. Without any evidence that the facts had not changed, GMU was not required to consider NVCC's prior determination even under the SCHEV's Domicile Guidelines.

its impact on the final decision." *Virginia Marine Res. Comm'n v. Insley*, 64 Va. App. 569, 575 (2015) (citation omitted). "It means merely the [tribunal] 'cannot deem legally insignificant' what the statute 'declares to be significant.'" *Id.* (citation omitted). This point is even more true when, as in the present case, the factor for consideration is a mere *non-binding guideline* lacking the force of law.

For these reasons, we hold that the SCHEV guidelines upon which Malik relies provide no support for her assertion that GMU's decision to deny her in-state tuition was arbitrary, capricious, or otherwise contrary to law.

III.

Because the circuit court erred in finding that GMU's decision to classify Malik as an out-of-state student was arbitrary, capricious, and contrary to law, we reverse and enter final judgment for GMU.

*Reversed and final judgment.*