******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LESLIE B. DANIELS, EXECUTOR (ESTATE OF JACK ANDERSON) *v.* COMMISSIONER OF REVENUE SERVICES
## (SC 21150)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiff, the executor of the estate of the decedent, A, appealed from the trial court's judgment upholding a tax assessment imposed by the defendant, the Commissioner of Revenue Services, against A's estate. At the time of his death, A maintained homes in Connecticut, Arizona and Florida, and divided his time between them. The audit division of the Department of Revenue Services had determined that A was a resident of and domiciled in Connecticut at the time of his death and, therefore, that his estate was subject to taxation pursuant to statute (§ 12-391 (d) (1) (C)). The commissioner, through the department's appellate division, subsequently upheld the audit division's domicile determination. The executor then appealed to the Superior Court, claiming that A had died as a Florida domiciliary and that A's estate should not have been subject to taxation in Connecticut. The trial court conducted a de novo trial during which it heard evidence concerning A's personal, social and proprietary connections with Connecticut and Florida, and ultimately determined that the executor had failed to establish, by clear and convincing evidence, that A was not a Connecticut domiciliary at the time of his death. Accordingly, the trial court concluded, inter alia, that the executor had not demonstrated that the assessment was erroneous or unreasonable. On appeal, the executor claimed, inter alia, that the trial court had improperly sustained the estate tax assessment insofar as it incorrectly concluded that A was domiciled in Connecticut at the time of his death. *Held*:

This court rejected the commissioner's argument that it was improper for this court to consider, sua sponte, whether the trial court had applied the appropriate standard of proof for purposes of that court's determination of whether A had been domiciled in Connecticut at the time of his death.

A taxpayer's burden of proof in an appeal from an estate tax assessment is an exceptional circumstance in which important considerations of justice outweigh the interest in enforcing procedural rules governing the preservation of claims and adversarial principles.

Moreover, this court has never previously had occasion to opine on the proper standard of proof required to establish domicile for estate tax purposes, and the appropriate burden of proof a taxpayer must satisfy in an appeal from a decision of the government's taxing authority necessarily implicates both the public's interest in and the taxpayer's entitlement to fair and accurate taxation.

The trial court improperly applied the clear and convincing evidence standard of proof, rather than the preponderance of the evidence standard, in making

its domicile determination, and, accordingly, the trial court's judgment was reversed to the extent that that court sustained the commissioner's tax assessment, and the case was remanded so that the trial court could apply the correct standard.

Under § 12-391 (h) (1), a decedent is presumed to have died as a resident of Connecticut for estate tax purposes, and the burden is expressly placed on the decedent's estate to establish exemption from taxation by reason of the decedent's alleged nonresidency, but that statute does not specify what standard of proof applies.

In Connecticut, when a civil statute is silent as to the applicable standard of proof, the preponderance of the evidence standard generally governs factual determinations required by that statute, and, although this court previously has held that the clear and convincing standard applies in the context of sales and use tax appeals, that higher degree of proof is generally reserved for civil cases involving allegations of quasi-criminal wrongdoing or when particularly important individual rights are involved.

In the present case, there was no compelling justification for courts to depart from the usual preponderance of the evidence standard when adjudicating estate tax appeals challenging the commissioner's domicile determination, and, therefore, this court held that, under § 12-391 (h) (1), the executor of a decedent's estate bears the burden of proving, by a preponderance of the evidence, that the decedent was not domiciled in Connecticut at the time of his or her death.

This court further clarified that, although the statutes (§§ 12-395 and 12-554) permitting appeals from the commissioner's domicile determinations do not expressly provide for a trial de novo, such appeals are to be tried by the reviewing court de novo, without the deference that generally occurs in other administrative appeals.

Moreover, in determining a decedent's domicile, the reviewing court is not limited to the evidence or legal theories presented at the agency level but, rather, may adopt whatever testimony it believes to be credible, and, although a court should consider the guidance provided in the case law and the factors set forth in the department's regulations (§ 12-701 (a) (1)-1 (d) (8)) for determining domicile, a court may afford those factors the weight it considers appropriate in light of the evidence presented on appeal.

The executor could not prevail on the claim that the estate was denied procedural due process insofar as the auditors who initially determined that A was not domiciled in Connecticut were not properly trained and used an undisclosed weighting system in making that determination.

In the absence of evidence that an improper error or procedure was repeated in or tainted a subsequent de novo determination of a decedent's domicile, such administrative errors do not create procedural due process violations.

In the present case, the trial court correctly determined that any procedural due process violation by the audit division was cured when the executor was

afforded a second review by the department's appellate division and a de novo trial in the Superior Court.

Argued January 28—officially released June 16, 2026

*Procedural History*

Appeal from the defendant's assessment of tax against the estate of the plaintiff's decedent, brought to the Superior Court in the judicial district of New Britain, Tax Session, and tried to the court, *Budzik, J.*; judgment sustaining the defendant's assessment, from which the plaintiff appealed. *Reversed in part*; *new trial*.

*Julie A. Lavoie*, with whom were *Jeffrey M. Sklarz* and, on the brief, *Daniel J. Krisch*, for the appellant (plaintiff).

*Joshua P. Britt*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*Opinion*

D'AURIA, J. In this appeal, we consider the burden of proof and the scope of appellate review applicable to an appeal from a determination of domicile by the defendant, the Commissioner of Revenue Services (commissioner), for the purposes of estate taxation. The plaintiff, Leslie B. Daniels (executor), executor of the estate of Jack Anderson (estate), appeals from the trial court's judgment sustaining the commissioner's estate tax assessment. The executor claims that the trial court improperly (1) sustained the assessment by erroneously finding that the decedent, Jack Anderson, was domiciled in Connecticut at the time of his death, and (2) rejected the executor's procedural due process claim. Following oral argument before this court, we ordered the parties to file supplemental briefs addressing the scope of the Superior Court's review in an appeal from the commissioner's domicile determination for the purposes of estate taxation and the appropriate standard of proof, if any, a decedent's estate must satisfy to prevail in that appeal. We hold that the estate bears the burden of proving, by

a preponderance of the evidence, that the decedent was not domiciled in Connecticut at the time of his death and that the Superior Court hears an appeal from the domicile determination for the purposes of estate taxation de novo. We agree with the trial court that the executor was not deprived of due process. Therefore, we reverse the trial court's judgment sustaining the commissioner's deficiency assessment and remand the case to that court for further proceedings to apply the appropriate standard of review. We affirm the trial court's judgment in all other respects.

Connecticut law imposes a tax on the transfer of the estate of each person who, at the time of death, was a resident of this state and whose estate exceeds a certain value. See General Statutes § 12-391 (d) (1) (C).[1] Under state law, a decedent whose estate is subject to the tax is presumed to have died while the decedent was a resident of Connecticut. See General Statutes § 12-391 (h) (1). The Regulations of Connecticut State Agencies define a "resident" as an "[individual] domiciled in Connecticut . . . ." Regs., Conn. State Agencies § 12-701 (a) (1)-1 (a) (1). "Domicile" is defined, in turn, as "the place which an individual intends to be his or her permanent home and to which such individual intends to return whenever absent." Id., § 12-701 (a) (1)-1 (d) (1). Under the regulations, "[a]n individual can only have one domicile. If an individual has two or more homes, the domicile is the one which the individual regards and uses as his or her permanent home. In determining an individual's intentions in this matter, the length of time customarily spent at each location is important but not necessarily conclusive." Id., § 12-701 (a) (1)-1 (d) (4).

The decedent died in 2015, leaving behind a sizeable fortune. After the decedent's death, the executor of the estate filed a Connecticut domicile declaration form with the commissioner, which is required for the estate of

---

[1]Although § 12-391 has been amended since the events at issue; see, e.g., Public Acts 2024, No. 24-149, § 20; Public Acts 2022, No. 22-117, § 17; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

any decedent who lived part-time in Connecticut but is claimed to be a nonresident for estate tax purposes at the time of death. The form contains questions intended to assist the commissioner in determining whether the decedent was domiciled in Connecticut and, thus, whether the estate is subject to taxation in this state. See Department of Revenue Services Form C-3 UGE (revised May, 2011), titled "State of Connecticut Domicile Declaration."

The executor's domicile declaration form triggered an audit by the audit division of the Department of Revenue Services (department). The audit division applied the twenty-eight factors listed in the department's income tax regulations. See Regs., Conn. State Agencies § 12-701 (a) (1)-1 (d) (8). The audit division assigned various weights[2] to each factor and determined that the decedent was a Connecticut resident at the time of his death for estate tax purposes. The executor filed a written protest to the audit division's determination with the department's appellate division pursuant to General Statutes § 12-391 (h) (3). The appellate division issued a final determination sustaining the audit division's assessment that the estate owed $13,198,554.60 in estate taxes.

The executor then appealed from the commissioner's determination to the Superior Court pursuant to General Statutes §§ 12-395 (a) (1) and 12-554,[3] claiming that the decedent had died as a Florida domiciliary, rendering his estate not subject to taxation in Connecticut. The executor also claimed that the commissioner's audit division had deprived the executor of procedural due process because the auditors were not properly trained in applying the twenty-eight factor domicile test in § 12-701 (a) (1)-1 (d) (8) of the Regulations of Connecticut State Agencies and used an undisclosed "weighting" system when considering the relative importance of those factors

[2]See part III of this opinion.

[3]Although § 12-554 has been amended since the events at issue; see Public Acts 2019, No. 19-186, § 22; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

as applied to the decedent. The trial court conducted a four day de novo trial, during which it heard testimony from ten witnesses and admitted into evidence more than 200 exhibits.

On the basis of the evidence adduced at trial, the court made the following factual findings. At the time of his death, the decedent was married with three adult children, two of whom lived in Texas and one in Pennsylvania. The decedent's funeral was held in Florida, and he is buried in Arlington National Cemetery in Virginia. His obituary was published in the Vero Beach News in Florida, the Greenwich Time, and The New York Times. The decedent was a successful businessman who lived significant portions of his life in several states.[4] At the time of his death, the decedent maintained homes in Arizona, Connecticut, and Florida.[5]

From 2006 until his death in 2015, the decedent divided his time among his three residences, typically staying approximately five and one-half months in Connecticut (from approximately May through mid-October), three and one half months in Florida (from approximately November through mid-February), and three months in Arizona (from mid-February through early May). The decedent maintained full homes, furnishings, and possessions at each residence.

[4]From 1957 to 1970, the decedent lived in Greenwich with his family. In about 1970, he moved with his family to Tennessee where he pursued business interests. In about 1980, he moved to Texas. The trial court found that he remained domiciled in Texas until 2006.

[5]In 1984, the decedent purchased a 4000 square foot condominium in Greenwich. In 2010, he purchased a second condominium in the same complex of approximately 3000 square feet in size and, in 2014, purchased a third unit, approximately 2000 square feet, also in the same complex. The decedent used the condominium purchased in 1984 as a personal residence for himself and his wife; the other two condominiums were used for guests, personal assistants, and health aides.

In 1989, the decedent purchased a home in Arizona comparable in size and accommodations to that of his Connecticut and Florida homes.

In 1991, the decedent acquired land and built an approximately 9700 square foot beachfront home in Vero Beach, Florida. The estate has never argued that the decedent was domiciled in Arizona.

In 2006, at Daniels' suggestion, the decedent filed a domicile declaration in Florida. He also held a Florida driver's license, was registered to vote in Florida, and maintained a local bank account in Florida, although his bills were sent to his business office in Texas for payment. At the time of his death, the decedent owned four cars registered in Connecticut and three cars registered in Florida. The decedent maintained personal friendships and social connections in both Florida and Connecticut, which the trial court found to have been substantial and "roughly equal . . . ." The decedent also participated in "concierge" medicine, which meant that he had access to physicians who communicated with one another and coordinated his care regardless of his location.

On the basis of these facts, the trial court concluded that the decedent's personal, social and property connections with Connecticut and Florida were generally equal. The court noted that the decedent's driver's license, voter registration, bank account, and personal declaration favored a finding that he was a Florida domiciliary. However, the court found these factors, comparatively, to be less persuasive indicators of the decedent's intention to remain in Florida permanently because, in the court's view, they involved one-time administrative tasks that held little practical significance in the decedent's daily life, particularly if undertaken—albeit legally—to prevent his estate from paying millions of dollars in taxes with minimal effort.[6] The court determined that the

---

[6]Section 12-701 (a) (1)-1 (d) (2) of the Regulations of Connecticut State Agencies provides: "A domicile once established continues until the individual moves to a new location with the bona fide intention of making his or her fixed and permanent home there. No change of domicile results from a removal to a new location if the intention is to remain there only for a limited time; this is the case even though the individual may have sold or disposed of his or her former home. The burden is upon an individual asserting a change of domicile to show that the necessary intention existed. In determining an individual's intention [to change domicile], declarations shall be given due weight, but they shall not be conclusive if they are contradicted by conduct. The fact that an individual registers and votes in one place is important but not necessarily conclusive, especially if the facts indicate that he or she did this merely to escape taxation in some other place."

decedent's choice to spend more time in Connecticut than in any other state, together with his substantial social and property connections with Connecticut, sufficiently counterbalanced the decedent's administrative elections and substantial social and property connections with Florida, where he spent significantly less time.

The trial court observed that, given the decedent's financial resources and lifestyle, the decedent had maintained residences in and other connections with multiple states that, under normal circumstances, would qualify as a primary residence and domicile. The court concluded that the executor had failed to demonstrate, by clear and convincing evidence, that the decedent was not a Connecticut domiciliary at the time of his death and, therefore, that the executor did not sustain his burden of proving that the commissioner's estate tax assessment was erroneous or unreasonable. The court concluded that, "at best, the evidence demonstrating that [the decedent] was a domiciliary of Florida at the time of his death [was] equivocal and well below the quantum of evidence necessary to convince [the] court that it was highly probable that [the decedent] was a Florida domiciliary at the time of his death and not a Connecticut domiciliary." The court also rejected the executor's procedural due process claim, finding that the executor was not deprived of due process "because [the] court trie[d] [the] case de novo and has made its own, independent determinations of the facts, without regard to whatever determinations may have been made by the commissioner."

The executor appealed to the Appellate Court from the judgment of the trial court, and we granted the executor's motion to transfer the appeal to this court. See General Statutes § 51-199 (c); Practice Book § 65-2. On appeal, the executor challenges both the trial court's decision to uphold the commissioner's domicile determination and its rejection of the executor's procedural due process claim.

I

In adjudicating whether the executor had carried his statutory burden of proof in this estate tax proceeding,

both parties and the trial court assumed that the executor had to present clear and convincing evidence of his claimed "exemption by reason of the decedent's alleged nonresidency." General Statutes § 12-391 (h)(1). Understandably, but not in our view ineluctably, this assumption stemmed from *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 823 A.2d 1184 (2003), a sales and use tax appeal brought pursuant to General Statutes (Rev. to 1991) § 12-422, in which this court held that, to succeed on appeal, "[t]he plaintiff must present clear and convincing evidence that the [sales and use tax] assessment is incorrect or that the method of audit or amount of tax assessed was erroneous or unreasonable." (Internal quotation marks omitted.) Id., 302.

In the present case, we raised at oral argument the question of whether the "clear and convincing" standard is also the appropriate burden of proof for a taxpayer in an estate tax appeal pursuant to §§ 12-395 and 12-554. After oral argument, we ordered the parties to file supplemental briefs addressing (1) whether the clear and convincing standard from our case law, articulated in *Leonard*, applies in the context of an executor's challenge to the commissioner's determination of domicile in an estate tax proceeding, and (2) the appropriate scope of review in a de novo appeal to the Superior Court from that determination.

The commissioner asserts that this court's consideration of these issues sua sponte is not justified under *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 160–64, 84 A.3d 840 (2014), or, in the alternative, that our discussion should be limited to " 'signaling to future litigants' " that they should raise the issues in a future case but without applying a different standard to the executor in the present case. Without conceding that the question of the applicable burden of proof and the scope of appellate review, when unpreserved, are the sorts of issues that we must justify raising and addressing ourselves under *Blumberg*

*Associates Worldwide, Inc.*,[7] we respectfully disagree with the commissioner that it is inappropriate for us to consider these issues under the present circumstances. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 161–64.

The commissioner concedes that the "threshold" or "minimal" requirements for our review of an unpreserved claim are met here because the record is adequate for us to review and decide the issue of the appropriate burden of proof, the parties have had an opportunity to be heard on the issue, and there is no prejudice to the commissioner as the objecting party. See id., 157, 162. Nonetheless, the commissioner contends that we should not consider the issue in the present case because none of the other necessary factors applies, namely, that (1) no party objects, (2) the party who would benefit from the unpreserved issue cannot prevail, or (3) the case involves "exceptional circumstances . . . ." Id., 161.

Understanding that the commissioner has objected to and that the executor would potentially benefit from our consideration of this issue, we conclude that this

---

[7]When a case is properly before this court, we are not limited to the particular legal theories the parties advance; rather, we retain independent authority to identify and apply the proper construction of the governing law. See *Meribear Productions, Inc.* v. *Frank*, 340 Conn. 711, 733, 265 A.3d 870 (2021); *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 311 Conn. 148. Indeed, we may consider and adopt legal *arguments* that differ from those the parties have raised if they are "subsumed within or intertwined with arguments related to the legal *claim* before the court." (Emphasis added; internal quotation marks omitted.) *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 644 n.2, 224 A.3d 147 (2020); see also *State* v. *Santiago*, 318 Conn. 1, 124, 122 A.3d 1 (2015) ("although we generally do not consider *claims or issues* that the parties themselves have not raised . . . in cases too numerous to mention, we have considered *arguments or factors* pertaining to those claims or issues that were not expressly identified by the parties" (citation omitted; emphasis in original)). It is not at all obvious that the applicable standard of proof in an appeal from the commissioner's domicile determination is properly characterized as a separate *claim* rather than an *argument* or *factor* "subsumed within or intertwined with" the issue that the executor brought before this court; (internal quotation marks omitted) *Jobe* v. *Commissioner of Correction*, supra, 644 n.2; namely, whether the trial court correctly determined that the decedent was a Connecticut domiciliary at the time of his death.

case presents an "exceptional circumstance" allowing the sua sponte review of an unpreserved claim. Having "provide[d] an opportunity for all parties to be heard on the issue," this case is one in which "important considerations of justice outweigh the interest in enforcing procedural rules governing the preservation of claims and adversarial principles . . . ." Id., 162.

Specifically, the evidentiary standard that taxpayers must meet in disputes with the state is an issue of sufficient gravity to warrant sua sponte review in the interest of fairness, particularly in a circumstance such as this one, when we have never previously had occasion to opine on the proper standard of proof required in establishing a domicile for estate tax purposes. The appropriate burden of proof a taxpayer must bear when appealing from a decision of the government's taxing authority necessarily implicates both the public's interest and the taxpayer's entitlement to fair and accurate taxation—a foundational public policy on which government rests. See *Robertson* v. *Stonington*, 253 Conn. 255, 260–61, 750 A.2d 460 (2000); see also *Sears, Roebuck & Co.* v. *Parsons*, 260 Ga. 824, 825, 401 S.E.2d 4 (1991) ("[t]he people's entitlement to fair and impartial tax assessments lies at the heart of our system, and, indeed, was a basic principle upon which this country was founded"). This is an interest that the commissioner himself has a duty to advance. See, e.g., *State* v. *Travelers Ins. Co.*, 73 Conn. 255, 261, 47 A. 299 (1900) ("it is the interest of every government that the burden of taxation should be distributed fairly and equally, and that it is the duty of the department in which the taxing power may be vested to honestly use its best judgment to secure such [a] result"), aff'd, 185 U.S. 364, 22 S. Ct. 673, 46 L. Ed. 949 (1902). For this reason, we cannot agree with the commissioner that the issues of the appropriately applicable standards are not of a public character but instead implicate only evidentiary standards applicable to individuals in "private tax disputes." Although governmental entities are treated like any other party for most litigation purposes, the "government also has a duty to advance the public's

interest in achieving justice, an ultimate obligation that outweighs its narrower interest in prevailing in a [lawsuit]." *Frey* v. *Dept. of Health & Human Services*, 106 F.R.D. 32, 37 (E.D.N.Y. 1985). We therefore have little difficulty concluding that a taxpayer's burden of proof in an appeal from the commissioner's deficiency assessment is an exceptional circumstance in which "important considerations of justice outweigh the interest in enforcing procedural rules governing the preservation of claims and adversarial principles . . . ." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 311 Conn. 162.

II

In Connecticut, "a tax is imposed upon the transfer of the estate of each person who at the time of death was a resident of this state." General Statutes § 12-391 (d) (1) (C). General Statutes § 12-701 (a) (1) defines a "[r]esident of this state" as "any natural person (A) who is domiciled in this state . . . ." "[E]ach decedent shall be presumed to have died a resident of this state [and] [t]he burden of proof in an estate tax proceeding shall be upon any decedent's estate claiming exemption by reason of the decedent's alleged nonresidency." General Statutes § 12-391 (h) (1). The commissioner has promulgated detailed regulations to assist in determining a taxpayer's domicile. See Regs., Conn. State Agencies § 12-701 (a) (1)-1 (d).

Section 12-554, made applicable to estate tax appeals by § 12-395 (a) (1), authorizes an appeal to the Superior Court from the commissioner's domicile determination. The estate tax statutes do not address the required standard of proof an estate must sustain to demonstrate on appeal to the Superior Court that the commissioner's domicile determination was erroneous. The executor argues that, in light of this statutory silence, the preponderance of the evidence standard is the appropriate standard of proof applicable to the intent-based domicile inquiry. The commissioner argues, to the contrary, that the clear and convincing evidence standard should apply

because our courts have applied this heightened standard in a variety of types of tax appeals, and the standard for challenging the commissioner's various determinations in court should be consistent, irrespective of the type of tax or the finding involved. We agree with the executor.

In *Leonard* v. *Commissioner of Revenue Services*, supra, 264 Conn. 286, this court first held in an appeal from a sales and use tax deficiency assessment pursuant to General Statutes (Rev. to 1991) § 12-422 that "[t]he plaintiff must present clear and convincing evidence that the assessment is incorrect or that the method of audit or amount of tax assessed was erroneous or unreasonable." (Internal quotation marks omitted.) Id., 302, quoting 68 Am. Jur. 2d 193, Sales and Use Taxes § 246 (2000).[8] In the nearly quarter century since our decision in *Leonard*, we have consistently applied the clear and convincing standard in sales and use tax appeals. See, e.g., *Alexandre* v. *Commissioner of Revenue Services*, 300 Conn. 566, 577, 22 A.3d 518 (2011); *Sikorsky Aircraft Corp.* v. *Commissioner of Revenue Services*, 297 Conn. 540, 568, 1 A.3d 1033 (2010). Neither this court nor the Appellate Court, however, has ever applied the clear and convincing standard of proof we articulated in *Leonard* beyond the sales and use tax context. In particular, we have never been presented with a case in which we would have to extend the clear and convincing standard to a de novo estate tax appeal, let alone a case involving the commissioner's domicile determination.

The commissioner correctly notes that, since *Leonard,* the Superior Court has also applied the clear and convincing standard of proof in income tax appeals; see, e.g., *Gavigan* v. *Commissioner of Revenue Services*, Docket No. CV-05-4003769-S, 2006 WL 337201, *1

---

[8]The current edition of the American Jurisprudence legal encyclopedia now cites this court's decision in *Alexandre* v. *Commissioner of Revenue Services*, 300 Conn. 566, 22 A.3d 518 (2011), which, in turn, cites *Leonard* v. *Commissioner of Revenue Services*, supra, 264 Conn. 286. See 67B Am. Jur. 2d Sales and Use Taxes § 216 (2026) ("[b]urden of proof as to additional or deficiency assessment of sales or use taxes; evidence").

(Conn. Super. January 27, 2006), aff'd, 99 Conn. App. 903, 916 A.2d 127 (2007); including income tax appeals challenging the commissioner's determination of the taxpayer's domicile. See, e.*g.*, *Sobel* v. *Commissioner of Revenue Services*, Superior Court, judicial district of New Britain, Docket No. CV-10-6006195-S (March 7, 2017) (64 Conn. L. Rptr. 235, 241–42), appeal dismissed, 333 Conn. 712, 218 A.3d 581 (2019); *Amen* v. *Law*, Superior Court, judicial district of New Britain, Tax Session, Docket No. CV-02-0515337 (April 14, 2005) (39 Conn. L. Rptr. 243, 245–48). In *Rizzuto* v. *Law*, Superior Court, judicial district of New Britain, Tax Session, Docket No. CV-06-4008351-S (February 28, 2007) (42 Conn. L. Rptr. 895), the Superior Court recognized that our tax statutes do not require a particular standard of proof, which would usually mean that the ordinary civil standard of proof of a fair preponderance of the evidence would apply, but applied the clear and convincing standard of proof because the legislature had not altered the standard of proof after our decision in *Leonard*. See id., 895–96.

Taking a cue from *Rizzuto,* the commissioner argues that we should infer from the General Assembly's inaction in the years since *Leonard* that the legislature approves of the clear and convincing standard in *all* tax appeals. Under the circumstances, however, we are not persuaded that *Leonard* compels an inference of legislative acquiescence that extends to the standard of proof involved in an appeal from the commissioner's domicile determination for estate tax purposes.[9] Our courts have

[9]Although, as noted, numerous Superior Court judges have applied our holding in *Leonard* to income tax appeals, including to challenges of the commissioner's domicile determinations in such appeals; see, e.*g.*, *Rizzuto* v. *Law*, supra, 42 Conn. L. Rptr. 895–96; *Amen* v. *Law*, supra, 39 Conn. L. Rptr. 245–48; the doctrine of legislative acquiescence, which rests on a presumption of legislative awareness, typically does not apply to unofficially reported trial court decisions. See, e.*g.*, *Butts* v. *Bysiewicz*, 298 Conn. 665, 686, 5 A.3d 932 (2010). But cf. *State* v. *Fernando A.*, 294 Conn. 1, 20 n.15, 981 A.2d 427 (2009) (reviewing court relied on doctrine of legislative acquiescence in considering officially published Superior Court decision as part of analysis, noting that

not invariably applied a heightened standard of proof to all appeals of tax assessments. Connecticut courts, for example, have frequently applied the preponderance of the evidence standard in taxpayer appeals of property tax assessments. See, e.g., *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 756, 699 A.2d 81 (1997); *Sharr* v. *Stonington*, Docket No. CV-08-4008495, 2011 WL 1409420, *3 (Conn. Super. March 24, 2011); *New Haven* v. *East Haven*, 47 Conn. Supp. 594, 609, 822 A.2d 376 (2001), aff'd, 263 Conn. 108, 818 A.2d 741 (2003). But see *Cornelius* v. *Arnold*, Docket No. CV-13-5015763-S, 2015 WL 670809, *3 (Conn. Super. January 30, 2015) (citing *Leonard* v. *Commissioner of Revenue Services*, supra, 264 Conn. 302, in applying clear and convincing standard of proof), aff'd, 168 Conn. App. 703, 147 A.3d 729 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1245 (2017). Moreover, in endorsing the clear and convincing standard for sales and use tax appeals in *Leonard*, this court did not provide any rationale that convinces us that the same standard should apply to a domicile determination. We relied only on a section of a legal encyclopedia specific to sales and use taxes as authority for the elevated standard of proof. See footnote 8 of this opinion and accompanying text. It is therefore not clear to us from *Leonard* that it is appropriate to apply this heightened standard to determinations of domicile, even though it is made in the context of an estate tax appeal. In particular, we do not consider it prudent to presume that the legislature has approved the application of the clear and convincing standard from *Leonard* to an appeal from a domicile determination made by the commissioner for estate tax purposes when, unlike with the sales and use tax, there is not even so much as a legal encyclopedia that we are aware of suggesting that taxpayers typically must establish their domicile by clear and convincing evidence in estate tax appeals.

Courts in other jurisdictions are divided on the applicable standard of proof for both tax appeals generally

decision's nonbinding status "[did] not detract from its status . . . as the only published authority" when legislature amended statute at issue).

and determinations of domicile particularly, and offer little guidance on the issue. Many state legislatures require taxpayers seeking relief from a tax assessment to prove by a preponderance of the evidence that the taxing authority's determination is erroneous. See, e.g., *Honeywell Information Systems, Inc.* v. *Board of Assessment Appeals*, 654 P.2d 337, 340 (Colo. App. 1982) ("[u]nder [Colo. Rev. Stat.] § 13-25-127 (1) . . . a taxpayer who protests a property tax assessment bears the burden of proving by a preponderance of the evidence that the assessment is incorrect"); *Shoshone County* v. *S&W OPS, LLC*, 170 Idaho 487, 491, 512 P.3d 1110 (2022) (under Idaho Code § 63-3812 (c), "[a] preponderance of the evidence shall suffice to sustain the burden of proof" (internal quotation marks omitted)); *Cain* v. *Custer County Board of Equalization*, 291 Neb. 730, 749, 868 N.W.2d 334 (2015) (taxpayer can rebut by preponderance of evidence presumption that assessor's valuation is correct); *DeBlois* v. *Clark*, 764 A.2d 727, 732 (R.I. 2001) ("Section 8-8-28 [of the General Laws of Rhode Island] clearly directs that the quantum of evidence sufficient to sustain the burden of proof in factual issues in tax cases is a preponderance of the evidence. Thus, petitioners needed only to demonstrate a change of domicile . . . by a preponderance of the evidence, not by clear and convincing evidence.").[10] Other jurisdictions impose a higher standard of proof;[11] see, e.g., *Walsh*

---

[10]See also, e.g., Cal. Rev. & Tax. Code §§ 51.5 (e), 110 (b) and 5170 (Deering 2016); Fla. Stat. Ann. § 194.301 (2) (a) (West 2025); Iowa Code Ann. § 429.2 (2) (b) (West 2023); Me. Rev. Stat. Ann. tit. 36, § 151-D 10 (F) (Supp. 2026); N.H. Rev. Stat. Ann. § 541:13 (2007); Okla. Stat. Ann. tit. 68, § 221 (E) (West 2025); Or. Rev. Stat. § 305.427 (2023); Utah Code Ann. § 59-1-604 (LexisNexis 2011).

[11]In *In re Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W. Va. 14, 672 S.E.2d 150 (2008), the Supreme Court of Appeals of West Virigina determined that a taxpayer challenging a property tax assessment must prove by clear and convincing evidence that the assessment is erroneous. Id., 27. In 2021, West Virginia's legislature amended its property tax statutes to provide that the standard of proof a taxpayer must meet at all levels of review, including on appeal, is the preponderance of the evidence standard. See W. Va. Code Ann. § 11-3-24a (e) (LexisNexis Cum. Supp. 2025).

v. *Property Tax Appeal Board*, 181 Ill. 2d 228, 234, 692 N.E.2d 260 (1998) (clear and convincing evidence); or require a multitiered burden of proof. See *Board of Managers of French Oaks Condominium* v. *Amherst*, 23 N.Y.3d 168, 175, 12 N.E.3d 1072, 989 N.Y.S.2d 642 (2014) (if taxpayer satisfies threshold burden of providing substantial evidence that assessor overvalued property, court then determines from entire record if taxpayer established overvaluation by preponderance of evidence). In reviewing claims of a change in domicile, courts in other jurisdictions have also applied disparate standards of proof; a majority utilize the preponderance of the evidence standard,[12] whereas others require the more demanding clear and convincing standard.[13] Federal courts are similarly split on the appropriate standard of proof a taxpayer must sustain when challenging a domicile determination. Compare, e.g., *McCann ex rel.*

[12]See, e.g., *Jizmejian* v. *Jizmejian*, 16 Ariz. App. 270, 274, 492 P.2d 1208 (1972); *In re Estate of Rodgers*, 149 So. 2d 391, 392 (Fla. App. 1963); *Ramsey* v. *Ramsey*, 96 Idaho 672, 679, 535 P.2d 53 (1975), overruled in part on other grounds by *Rice* v. *Rice*, 103 Idaho 85, 645 P.2d 319 (1982); *In re Estate of Banks*, 258 Ill. App. 3d 529, 532, 629 N.E.2d 1223 (1994); *Succession of Simmons*, 109 La. 1095, 1098, 34 So. 101 (1903); *Kurtz* v. *Kurtz' Estate*, 169 Md. 554, 558, 182 A. 456 (1936); *Shim* v. *Rutgers — The State University of New Jersey*, 191 N.J. 374, 391, 924 A.2d 465 (2007); *Hall* v. *Wake County Board of Elections*, 280 N.C. 600, 609, 187 S.E.2d 52 (1972); *McEwen* v. *McEwen*, 50 N.D. 662, 673, 197 N.W. 862 (1924); *Cunningham* v. *Testa*, 144 Ohio St. 3d 40, 48, 40 N.E.3d 1096 (2015); *McKiddy* v. *State*, 366 P.2d 933, 935 (Okla. 1961); *DeBlois* v. *Clark*, supra, 764 A.2d 732.

[13]See, e.g., *Blackburn* v. *Blackburn*, 41 Haw. 37, 41 (1955); *Bicknell* v. *Kansas Dept. of Revenue*, 315 Kan. 451, 480, 509 P.3d 1211 (2022); *Every* v. *Supervisors of the Madison Checklist*, 124 N.H. 824, 827, 474 A.2d 1059 (1984); *Hosley* v. *Curry*, 85 N.Y.2d 447, 451–52, 649 N.E.2d 1176, 626 N.Y.S.2d 32 (1995); *Milam* v. *Milam*, 450 Pa. Super. 597, 603, 677 A.2d 1207 (1996), appeal denied, 547 Pa. 729, 689 A.2d 234 (1997); *Quazzo* v. *Dept. of Taxes*, 197 Vt. 278, 288, 103 A.3d 458 (2014); *George Mason University* v. *Malik*, 296 Va. 289, 296, 819 S.E.2d 420 (2018); see also *People* v. *Malburg*, Docket No. B223580, 2011 WL 6004292, *30 (Cal. App. November 30, 2011) ("[n]o single fact . . . establishes domicile as a matter of law. Rather it is a question of substantial evidence"), review denied, California Supreme Court, Docket No. S199255 (March 14, 2012), cert. denied, 568 U.S. 823, 133 S. Ct. 204, 184 L. Ed. 2d 40 (2012), and cert. denied, 568 U.S. 823, 133 S. Ct. 211, 184 L. Ed. 2d 40 (2012).

*Estate of McCann* v. *George W. Newman Irrevocable Trust*, 458 F.3d 281, 289–90 (3d Cir. 2006) (rejecting clear and convincing standard and adopting preponderance of evidence standard in determining domicile for personal jurisdiction), and *García Pérez* v. *Santaella*, 364 F.3d 348, 351 (1st Cir. 2004) (same), with *Katz* v. *Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 (2d Cir. 1984) (adopting clear and convincing standard of proof based on New York state law). Therefore, a survey of the law of other jurisdictions does not demonstrate a consensus position on the issue. Rather, we must look to principles drawn from our own law to determine the appropriate standard of proof the legislature intended that taxpayers must sustain when challenging the commissioner's assessment of this state's estate tax based on Connecticut domicile.

Section 12-391 (h)(1) places the burden of proof on the "decedent's estate claiming exemption by reason of the decedent's alleged nonresidency." The statute is silent as to the standard of proof the decedent's estate must sustain to meet its burden. In Connecticut, generally, as in many states, "when a civil statute is silent as to the applicable standard of proof, the preponderance of the evidence standard governs factual determinations required by that statute." *State* v. *Davis*, 229 Conn. 285, 295–96, 641 A.2d 370 (1994); see also, e.g., *E.M.D Sales, Inc.* v. *Carrera*, 604 U.S. 45, 52, 145 S. Ct. 34, 220 L. Ed. 2d 309 (2025) ("[f]aced with silence, courts usually apply the default preponderance standard"); *Mallory* v. *Mallory*, 207 Conn. 48, 52, 539 A.2d 995 (1988) (fair preponderance is "the ordinary civil standard of proof"). In most civil cases, a party satisfies his or her burden when "the evidence induc[es] in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact in issue is true." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 291.

On occasion, Connecticut courts impose the more onerous, intermediate burden of proof—clear and convincing evidence—which falls between the ordinary civil

standard of a preponderance of the evidence and proof beyond a reasonable doubt, which is required to find guilt in criminal cases and is met when the evidence induces in the mind of the trier a "reasonable belief that the facts asserted are highly probably true . . . ." (Emphasis omitted; footnote omitted; internal quotation marks omitted.) *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 794, 700 A.2d 1108 (1997). Generally, the higher degree of proof imposed by the clear and convincing standard is reserved for civil cases involving allegations of quasi-criminal wrongdoing, such as fraud, or when particularly important individual rights are involved. See E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 3.5.2, pp. 128–29; see also *In re Zakai F.*, 336 Conn. 272, 296–97, 255 A.3d 767 (2020) (constitutional presumption that reinstatement of guardianship rights is in best interest of child must be overcome by clear and convincing evidence to protect fundamental right to parent child); *Schaffer* v. *Lindy*, 8 Conn. App. 96, 104, 511 A.2d 1022 (1986) (higher degree of proof is frequently imposed in civil cases "to sustain claims which have serious consequences or harsh or far-reaching effects on individuals, to prove [wilful], wrongful, and unlawful acts, to justify an exceptional judicial remedy, or to circumvent established legal safeguards" (internal quotation marks omitted)), overruled in part on other grounds by *Stuart* v. *Stuart*, 297 Conn. 26, 996 A.2d 259 (2010).

We find no compelling justification for courts to depart from the usual preponderance of the evidence civil standard when adjudicating estate tax appeals challenging the commissioner's domicile determination. In our view, the decedent's domicile does not present an "extraordinary [circumstance]" that demands a higher degree of proof. *Dacey* v. *Connecticut Bar Assn.*, 170 Conn. 520, 534, 368 A.2d 125 (1976). We agree with the trial court in *Amen* v. *Law*, supra, 39 Conn. L. Rptr. 245, that a person's domicile is "of no small moment," as it raises important considerations involving the individual rights of taxpayers, although a higher degree of proof

may be appropriate when important individual rights are involved. However, it is illogical in this context to use that rationale to impose a more demanding burden of proof on the decedent's estate, which stands to suffer the consequences of an erroneous domicile determination. This is particularly true in light of § 12-391 (h)(1), which already places the commissioner in a favorable position by requiring the executor to overcome the presumption of Connecticut residency in the domicile inquiry.

The commissioner argues that determining a taxpayer's domicile is simply a finding of fact that is part of the commissioner's core function in assessing taxes, and a higher standard of proof appropriately gives weight to the presumption that the commissioner has acted properly in making assessments. To the extent that sales and use tax appeals often involve objective, data driven analyses of accounting data and financial records, domicile determinations instead present a question of fact determined by ascertaining an individual's intent from the totality of the individual's acts, declarations and circumstances. See, e.g., *Adame* v. *Adame*, 154 Conn. 389, 391–92, 225 A.2d 188 (1966). A domicile inquiry does not challenge an administrative finding of objective facts that lend themselves to a greater degree of certainty, therefore justifying the protection on appeal afforded by a higher standard of proof; rather, the domicile inquiry focuses on the unique facts and circumstances of each case that indicate an individual's subjective intent, i.e., where the individual resides and intends to remain. We do not believe that the department possesses any expertise in determining that intent in the same way it has expertise in complex accounting methods, financial systems, or asset valuations that may justify elevating the standard of proof a taxpayer is required to sustain in challenging other types of assessments, including other types of determinations involved in an estate tax assessment.[14]

[14]As noted in § 12-395 (a) (2), probate courts also make domicile findings, demonstrating that determining a taxpayer's domicile is not solely within the expertise of the department. Section 12-395 (b) provides a

To the extent that standards of proof reflect an assessment of the comparative social costs of erroneous factual determinations by allocating the risk of error between litigants, we believe that the preponderance of the evidence standard strikes the appropriate balance in the context of the statutory framework at issue. See *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 792–93; see also *State* v. *Davis*, supra, 229 Conn. 294 (preponderance standard "indicates that the litigants should share equally the risk of error . . . because the interests at stake have roughly equal societal importance" (internal quotation marks omitted)). The commissioner argues that a higher burden of proof is appropriate because the statutory framework created by the legislature in estate tax matters indicates an intentionally unbalanced allocation of risk between the commissioner and the estate. In the commissioner's view, the ordinary civil standard is insufficient because it "assumes all parties start at square one, with the scales equally balanced." We agree with the commissioner that the legislature has created a presumption that a decedent whose estate may be subject to tax is a Connecticut resident for estate tax purposes. However, we have not been presented with any persuasive evidence that the legislature intended to place additional weight on the side of the commissioner—beyond the requirement in § 12-391 (h) (1) that the estate must overcome the presumption of in-state residency—for purposes of this inquiry by requiring that taxpayers meet a higher standard of proof that the tax statutes do not specifically dictate.

The commissioner also urges us to conclude that the executor had to present clear and convincing evidence to carry his burden in this case because *Leonard* held that such a standard of proof applies to sales and use tax appeals, and the standard in tax appeals should be consistent regardless of the tax at issue and the appeal framework provided by statute. Although we presume that the legislature has "enacted a consistent and harmonious

route to appeal a domicile determination by the commissioner to the Probate Court.

body of law"; *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 309, 152 A.3d 488 (2016), cert. denied, 581 U.S. 1018, 137 S. Ct. 2217, 198 L. Ed. 2d 659 (2017); we are aware of no evidence that this presumption reaches down to the level of the standard of proof required on appeal to reverse the commissioner's domicile determination, particularly when the standard articulated in *Leonard* was not expressed by the legislature itself. The hobgoblin of consistency—or consistency only for the sake of consistency—across statutory frameworks that present different factual inquiries, presumptions, and burden shifting schemes, is neither a virtue nor necessarily legislatively intended. It is not unreasonable to conclude that a lower standard of proof is appropriate, or even intended by the legislature, for one issue, and a more stringent burden appropriate for another.

We do not intend to suggest, as the executor argues, that a domicile determination is inherently incompatible with a clear and convincing standard of proof. Disproving Connecticut domicile by clear and convincing evidence is not an insurmountable burden. See, e.g., *Sobel* v. *Commissioner of Revenue Services*, supra, 64 Conn. L. Rptr. 241–42. We conclude only that, in our view, an appeal from a domicile determination by the commissioner in an estate tax framework that places the burden on the executor to overcome a presumption of domicile—a burden that never shifts to the commissioner—does not warrant a heightened standard of proof absent a statutory directive.

Remand is required for application of the preponderance of the evidence standard. We also express no view as to whether the executor would have prevailed under the less stringent standard of proof that we articulate today for tax appeals of this sort. The trial court observed that the executor's case "would have been a close decision, even if the court were deciding [the] case under the more lenient preponderance of the evidence standard." Given that the trial court found the evidence to be in "equipoise" in this case, the numerous factors that go

into a determination of domicile, and because the parties, especially the commissioner, may have tried their cases differently had they been aware that the executor had a different burden of proof than what they and the trial court assumed, we express no opinion regarding the outcome of this matter, which must be adjudicated under the proper standard of proof. See, e.g., *Braffman* v. *Bank of America Corp.*, 297 Conn. 501, 521–22, 998 A.2d 1169 (2010) (citing cases). Instead, we conclude only that, because our estate tax statutes are silent as to the standard of proof applicable to establishing a decedent's domicile, "the preponderance of the evidence standard governs factual determinations required by [the] statute[s]"; *State* v. *Davis*, supra, 229 Conn. 295–96; and, accordingly, we remand the case to the trial court for a new hearing to apply the appropriate standard of proof.

### III

We also ordered the parties to address in their supplemental briefs the appropriate scope of review in an appeal, pursuant to §§ 12-395 and 12-554, from a domicile determination made by the commissioner for the purpose of estate taxation. The parties agree that appeals are heard by the trial court de novo without deference to the commissioner's determinations. We agree with the parties. Given the need for a remand, we take this occasion to elaborate on how a trial court should conduct a de novo appeal pursuant to §§ 12-395 and 12-554 when § 12-391 (h) (1) provides in relevant part that, for estate taxation purposes, "each decedent shall be presumed to have died a resident of this state" and that "[t]he burden of proof in an estate tax proceeding shall be upon any decedent's estate claiming exemption by reason of the decedent's alleged nonresidency."

The statutory provisions that provide for an appeal of the commissioner's domicile determination in estate tax matters do not expressly provide for a trial de novo. Although this court has not had occasion to expressly state that appeals pursuant to §§ 12-395 and 12-554 are heard de novo, we have interpreted the language of many

similar tax appeal statutes to entitle parties appealing from an adverse ruling of the commissioner to a de novo trial by the Superior Court. Compare General Statutes §§ 12-237 and 12-422 with General Statutes § 12-554; see also, e.g., Practice Book § 14-7 (c) ("[a]ppeals in which the parties are entitled to a trial de novo . . . includ[e] . . . (3) appeals from the Commissioner of Revenue Services"); *Achillion Pharmaceuticals, Inc.* v. *Law*, 291 Conn. 525, 527 n.3, 970 A.2d 57 (2009) (tax appeals pursuant to § 12-237 entitle taxpayer to de novo trial); *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 143–45, 527 A.2d 679 (1987) (rejecting claim that commissioner's findings are accepted unless they are clearly erroneous and determining that sales and use tax appeals pursuant to § 12-422 are heard de novo); *Xerox Corp.* v. *Board of Tax Review*, 175 Conn. 301, 303, 397 A.2d 1367 (1978) (property tax appeals pursuant to General Statutes (Rev. to 1977) § 12-118 are conducted de novo); *Yale University* v. *New Haven*, 169 Conn. 454, 465, 363 A.2d 1108 (1975) ("Our own decisions are clear on this issue. A taxpayer who is aggrieved by the decision of the board of tax review has an appeal to the courts where the matter is tried de novo." (Internal quotation marks omitted.)).

An appeal pursuant to §§ 12-395 and 12-554 of a domicile determination made by the commissioner is, therefore, tried de novo by the Superior Court, "without the deference that characterizes other administrative appeals." *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 691, 894 A.2d 919 (2006); see also *Konover* v. *West Hartford*, 242 Conn. 727, 741, 699 A.2d 158 (1997) (in de novo proceedings, triers of fact make independent determination without regard to action or decision of lower tribunal). Nor, in a de novo appeal, is the reviewing court limited to the evidence presented to the commissioner at the agency level or to the particular legal theories raised in that proceeding; rather, the reviewing court may adopt whatever testimony it believes to be credible. See, e.g., *Alexandre* v. *Commissioner of Revenue Services*, supra, 300 Conn. 577; *Chatterjee* v. *Commissioner of Revenue Services*,

supra, 690–91. On appeal, it is the executor's burden to overcome the statutory presumption that the decedent, at the time of his death, was a resident of Connecticut. See General Statutes § 12-391 (h) (1); see also *Alexandre* v. *Commissioner of Revenue Services*, supra, 577 ("[i]t is well established that the burden of proving an error in a deficiency assessment is on the plaintiff" (internal quotation marks omitted)); *Old Farms Associates* v. *Commissioner of Revenue Services*, 279 Conn. 465, 481 n.13, 903 A.2d 152 (2006) (taxpayer challenging assessment of property bears burden of establishing that property was overassessed).

Domicile is defined as residency coupled with the intention of remaining permanently. "The intention is a fact which must be found by the court . . . ." (Citations omitted.) *Adame* v. *Adame*, supra, 154 Conn. 391; see also Regs., Conn. State Agencies § 12-701 (a) (1)-1 (d) (1) ("[d]omicile, in general, is the place which an individual intends to be his or her permanent home and to which such individual intends to return whenever absent"). Therefore, the trial court's function in an estate tax appeal from a domicile determination by the commissioner is to ascertain whether, considering all of the evidence presented to the court—not what was presented to the commissioner—the estate has proved by a preponderance of the evidence that the decedent was not a Connecticut domiciliary at the time of his or her death. Our case law and the commissioner's tax regulations provide adequate guidance for the trial court to determine a decedent's domicile. See Regs., Conn. State Agencies § 12-701 (a) (1)-1 (d) (8). Although the trial court should consider the factors set forth in the regulations, the court may afford the factors the weight it considers appropriate in light of the evidence presented on appeal. On further appeal, a trial court's factual determinations on the issue of domicile will not be disturbed unless they are clearly erroneous. See, e.g., *New England Yacht Sales, Inc.* v. *Commissioner of Revenue Services*, 198 Conn. 624, 634, 504 A.2d 506 (1986).

IV

Finally, the executor contends that the trial court incorrectly rejected his procedural due process claim. The executor asserts that the department's audit division examiners were not properly trained to apply the twenty-eight factors used to determine domicile and that the audit division used an undisclosed "weighting" system when considering the relative importance of the decedent's domicile factors. The executor claims that the audit division improperly used a "domicile chart" created by Barbara Collins, the department supervisor who oversaw the audit of the executor's estate tax claim. The chart imported the twenty-eight factors listed in the income tax regulations and assigned various weight to different factors. Collins testified that the weight assigned in the chart was not based on a particular statute or regulation but on an analysis of court cases representing her attempt to establish the relative importance of the various factors.

The executor challenged the audit division's initial determination by filing a protest with the department's appellate division, which identifies and corrects any errors the audit division may make. The appellate division requested additional information from the executor to evaluate the protest, but the executor declined to respond. The executor requested a final determination without further review. Accordingly, the appellate division made no additional factual findings and denied the executor's protest. The executor's protest was handled by two appeals officers, both of whom testified that they did not use the weighting system the audit division had employed and instead conducted a second audit analyzing the estate's file and the regulatory domicile factors anew before issuing a final determination. The executor appealed from the appellate division's determination to the Superior Court, which heard the appeal de novo without deference to the determination of either the commissioner's audit or appellate division.

Relying on *Orange Street Armory Associates, Inc.* v. *New Haven*, 17 Conn. App. 166, 551 A.2d 759 (1988)

(*Orange Street*), the trial court determined that the executor suffered no prejudice and was deprived of no procedural due process because the court heard the appeal de novo, arriving at its own independent conclusion without regard to the determinations of the commissioner. We agree. In *Orange Street*, the plaintiff, a developer, claimed that the defendant, the city of New Haven, improperly denied the developer a deferral of a tax assessment by misinterpreting the statutory meaning of the term "rehabilitation." Id., 168. The defendant conceded that the original assessment applied guidance contained in an unpublished internal memorandum that might have resulted in a deprivation of the plaintiff's due process rights. Id., 170. The defendant's assessment deferrals appeals committee and the Superior Court, each hearing the matter de novo, determined that any reasonable interpretation of the definition of "rehabilitation" would have compelled the same conclusion. Id. The Appellate Court held that, even if "the earlier decision of the department [was] marred by reliance on the unpublished criteria contained in the internal memorandum . . . [u]nless the procedural or legal error that flawed the earlier decision is repeated or otherwise taints the trial de novo," the decision could not be challenged on the basis of earlier procedural errors. Id., 172.

*Orange Street* is consistent with case law from the federal courts and this court holding that, absent evidence that an improper error or procedure was repeated or tainted the subsequent de novo determination of the decedent's domicile, administrative errors do not create procedural due process violations. See, e.g., id.; see also *Alam & Sarker, LLC* v. *United States*, 113 F.4th 153, 167 (1st Cir. 2024) ("assuming arguendo that a procedural due process violation existed at the administrative level, the de novo hearing in the [D]istrict [C]ourt cured the violation" (emphasis omitted; internal quotation marks omitted)), quoting *Traficanti* v. *United States*, 227 F.3d 170, 175 (4th Cir. 2000); *Kim* v. *United States*, 121 F.3d 1269, 1274 (9th Cir. 1997) ("[a] trial de novo, in which the existence of a violation is examined afresh,

and the parties are not limited in their arguments to the contents of the administrative record, satisfies the strictures of procedural due process"); *Konover* v. *West Hartford*, supra, 242 Conn. 743 n.9 ("affording the plaintiff a trial de novo would seem to alleviate any due process problem"). We therefore conclude that the trial court correctly determined that any infringement on the procedural due process rights of the executor caused by the commissioner were cured when the executor was afforded a second review by the appellate division and a de novo trial in the Superior Court.

The judgment is reversed only as to the trial court's decision sustaining the commissioner's assessment and the case is remanded for a new trial limited to the issue of the decedent's domicile in accordance with this opinion; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.